**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF MARYLAND**

| | | |
|---|---|---|
| SYDELLE GOLDWURM, Individually and on behalf of all others similarly situated, 176-29 Kildare Road Jamaica, NY 11432 | * * * | |
| Plaintiff, | * | Case No. |
| v. | * * | |
| AMERICAN REALTY CAPITAL TRUST, INC. SERVE ON: American Realty Capital Trust, Inc. 405 Park Avenue New York, New York, 10022, | * * | |
| Nominal Defendant, | * | |
| - and - | * | |
| NICHOLAS S. SCHORSCH SERVE ON: American Realty Capital Trust, Inc. 405 Park Avenue New York, New York, 10022 | * * * | |
| - and - | * | |
| LESLIE D. MICHELSON SERVE ON: American Realty Capital Trust, Inc. 405 Park Avenue New York, New York, 10022 | * * | **JURY DEMAND** **ENDORSED HERON** |
| - and - | * | |
| WILLIAM M. KAHANE SERVE ON: American Realty Capital Trust, Inc. 405 Park Avenue New York, New York, 10022 | * * * | |
| - and - | * | |
| WILLIAM G. STANLEY SERVE ON: American Realty Capital Trust, Inc. 405 Park Avenue New York, New York, 10022 | * * | |
| - and - | * | |

ROBERT H. BURNS                                          *
SERVE ON: American Realty Capital Trust, Inc.
405 Park Avenue                                         *
New York, New York, 10022
                                                        *

                        - and -                         *

                                                        *
REALTY INCOME, CORP.,
SERVE ON: Realty Income, Corp.                          *
600 La Terraza Boulevard
Escondido, CA 92025                                     *
                        - and -
                                                        *
TAU ACQUISITION LLC
SERVE ON:                                               *
600 La Terraza Boulevard
Escondido, CA 92025                                     *

         Defendants.                                    *

---

**CLASS ACTION AND DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY
DUTY AND INDIVIUDAL CLAIMS FOR VIOLATION OF SECTIONS 14(a) and
(e) <u>AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934</u>**

Sydelle Goldwurm ("Plaintiff"), by her undersigned attorneys, alleges the following upon

information and belief, except as to those allegations pertaining to Plaintiff which are alleged

upon personal knowledge:

<u>**NATURE OF THE ACTION**</u>

1.      Plaintiff brings this action derivatively and on behalf of the public shareholders of

American Realty Capital Trust, Inc. ("ARCT" or the "Company") against ARCT and its Board

of Directors (the "Board" or "Individual Defendants") to enjoin a proposed transaction

announced on September 6, 2012 (the "Proposed Transaction"), pursuant to which ARCT will be

merged with and into Tau Acquisition LLC ("Merger Sub"), a wholly-owned subsidiary of

Realty Income, Corp. (collectively, "Realty Income").

2.      On or about September 6, 2012, the Individual Defendants caused ARCT to enter into an agreement and plan of merger (the "Merger Agreement") to be acquired by Realty Income in an all-stock transaction.   Pursuant to the Merger Agreement, which has been unanimously approved by the Board, ARCT shareholders will receive 0.2874 shares of Realty Income common stock in exchange for each share of ARCT common stock they own (the "Exchange Ratio").   Based on Realty Income's closing share price on September 10, 2012, ARCT shareholders would receive a value of $12.21 per share, or approximately $1.9 billion in total equity value.   Realty Income will also assume about $526 million in debt and repay about $574 million of outstanding debt and transaction expenses, bringing the total equity value to approximately $2.95 billion.   According to the press release announcing the Proposed Transaction, the Proposed Transaction is anticipated to close during the fourth quarter of 2012 or early in the first quarter of 2013.

3.      As described below, the Proposed Transaction is the product of an inadequate and flawed sales process of the Company to Realty Income.  In addition, the Proposed Transaction substantially undervalues ARCT and as a result Plaintiff and all other public shareholders of AMCT are receiving inadequate consideration under the Proposed Transaction. In fact, the Proposed Transaction provides ARCT shareholders with a miniscule premium of merely 2% over its closing price on September 5, 2012.   Moreover, the process by which Defendants propose to consummate the Proposed Transaction, including the dissemination of proxy materials that omit material information important to Plaintiff and all public shareholders of ARCT in casting an informed vote on the Proposed Transaction, are fundamentally unfair to Plaintiff and the other public shareholders of the Company.

4.     Further locking up the Company, Defendant Schorsch and Kahane have entered into voting agreements (the "Voting Agreement"), whereby they have committed approximately 1,269,771 shares in favor of the Proposed Transaction.

5.     To lock up these benefits and ensure that ARCT is delivered into the hands of Realty Income, ARCT insiders have agreed to onerous deal protection devices that effectively chill any potential auction process for the Company, effectively rendering the Proposed Transaction a *fait accompli*.  For example, the Board agreed to: (i) no "collar" guaranteeing ARCT's shareholders a minimum dollar threshold for their shares under the exchange ratio; (ii) a "No Solicitation" provision barring the Board and any Company personnel from attempting to procure a price in excess of the amount offered by Realty Income; (iii) a "matching rights" provision whereby the Company must promptly notify Realty Income of any unsolicited competing bidder's offer; and (iv) an unreasonable $51 million termination fee to be paid to Realty Income if the Board agrees to a competing proposal.

6.     As further discussed below, in connection with the Proposed Transaction, ARCT, ARCT OP and AR Capital, an entity majority-owned and controlled by Defendant Nicholas S. Schorsch ("Schorsch"), Chairman of the Board of Directors of ARCT, and Defendant William M. Kahane ("Kahane"), ARCT chief financial officer, president and director, entered in an "Incentive Listing Fee Note Agreement."  As a result of these acts, Defendant Schorsch and Kahne are hopelessly conflicted under the Proposed Transaction because they have a substantial interest in the timing and execution of the Incentive Listing Fee Note Agreement.

7.     On October 1, 2012, Realty Income and ARCT filed a Form S-4 with the Securities and Exchange Commission ("SEC") containing a joint proxy statement/prospectus and in which ARCT's Board recommends that ARCT stockholders approve the Proposed Transaction ("Registration Statement").  A shareholder vote was scheduled for December 13,

2012 on the Proposed Transaction and later withdrawn but will soon be rescheduled. As described more fully herein, the Registration Statement is replete with material omissions and misstatements.

8. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants for their violations of their fiduciary duties of loyalty, good faith, due care, and full and fair disclosure.

## JURISDICTION AND VENUE

9. Each of the Individual Defendants owes fiduciary duties of loyalty, good faith, fair dealing, due care and candor to Plaintiff and the other members of the Class (defined below). They are acting in concert with one another in violating their fiduciary duties as alleged herein, and, specifically, in connection with the Proposed Transaction.

10. This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C §1331 in that plaintiff's claims arise in part under the Constitution and laws of the United States, including the Exchange Act [15 U.S.C. §78aa] and 28 U.S.C. §1331. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), (c), and (d) as Plaintiff and the defendants are citizens of and domiciled in different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. Given that the Proposed Transaction is valued at $2.95 billion, the injunctive relief sought herein will exceed a sum or value of $75,000. This action is not a collusive one to confer jurisdiction on this Court.

12. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because one or more of the defendants, including ARCT either resides in or maintains executive offices in this District,

and a substantial portion of the transactions and wrongs that are the subject of this complaint, occurred in substantial part in this District.  Finally, the Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

13.     Plaintiff is, and at all relevant times was, a shareholder of ARCT common stock. Defendant ARCT is a Maryland corporation that maintains its principal executive offices at 405 Park Avenue, 14th Floor, New York, New York 10022.   ARCT is a leading Real Estate Investment Trust ("REIT") that acquires, owns and operates single-tenant freestanding commercial properties.  The Company's real estate portfolio is comprised of long-term, net leases with primarily investment grade tenants.  ARCT's primary goal is to provide durable, reliable income for investors through the delivery of dependable monthly dividends.  ARCT's common stock trades on the NASDAQ Global Select Market under the ticker symbol "ARCT." Substantially all of ARCT's business is conducted through American Realty Capital Operating Partnership, L.P., a Delaware limited partnership ("ARCT OP"), of which ARCT is the sole general partner.

14.     Defendant Schorsch has served as a director of ARCT since the Company was formed in August 2007.  Schorsch originally served as the Company's Chief Executive Officer ("CEO") and now serves as the Company's Non-Executive Chairman.  Schorsch is also the Chairman and CEO of American Realty Capital New York Recovery REIT, Inc. ("NYRR"), and Chairman and CEO of American Realty Capital Healthcare Trust, Inc. ("ARC HT"), as well as chairman and CEO of American Realty Capital Daily Net Asset Value Trust, Inc. ("ARC DNAV").

15.     Defendant Kahane has served as Chief Executive Officer since March 2012, and Former Advisor, Property Manager and a director since 2007.  Kahane and Schorsch are the majority owners of AR Capital, the sponsor of ARCT.  AR Capital has contractual arrangements with ARCT as more fully described herein.  Kahane serves as a director of ARC HT since its formation in August 2010 and an officer, advisor and property manager from August 2012 until March 2012.  Kahane also served as a director and officer of ARC DNAV and ARC HT.

16.     Defendant Leslie D. Michelson ("Michelson") has served as a director of ARCT since January 2008.  Michelson has served as a director of ARC DNAV and NYRR.

17.     Defendant William G. Stanley ("Stanley") has served as a director of ARCT since January 2008.  Stanley has served as a director of NYRR and other American Realty related organizations.

18.     Defendant Robert H. Burns ("Burns") has served as a director of ARCT since January 2008.  Burns has served as a director of NYRR, ARC HT and other American Realty related organizations.

19.     Defendant Realty Income is a Maryland corporation and maintains its principal executive offices at 600 La Terraza Boulevard, Escondido, CA 92025.  Realty Income is a New York Stock Exchange real estate company dedicated to providing shareholders with dependable monthly income.   Realty Income owns over 2,600 properties under long-term lease agreements with 136 leading regional and national retail chains and other commercial enterprises.  The company is an active buyer of commercial properties nationwide.

20.     Defendant Tau Acquisition LLC is a Delaware limited liability company and a wholly-owned subsidiary of Realty Income.  Tau Acquisition LLC was formed solely for the purpose of completing the Proposed Transaction.

21.     The Defendants identified in paragraphs 6 through 10 are collectively referred to herein as the "Individual Defendants."  By virtue of their positions as directors and/or officers of ARCT, the Individual Defendants are in a fiduciary relationship with Plaintiff and the other public shareholders of ARCT, and owe Plaintiff and ARCT's public shareholders the highest obligations of loyalty, good faith, fair dealing and due care.  Each of the Individual Defendants at all times had the power to control and direct ARCT to engage in the misconduct alleged herein. The Individual Defendants' fiduciary obligations required them to act in the best interest of Plaintiff and all ARCT shareholders.

22.     Each of the Individual Defendants owes fiduciary duties of loyalty, good faith, fair dealing, due care and candor to Plaintiff and the other members of the Class (defined below). They are acting in concert with one another in violating their fiduciary duties as alleged herein, and, specifically, in connection with the Proposed Transaction.

## THE FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

23.     By reason of Defendant Schorsch, Kahane, Michelson, Stanley and Burns (collectively, the "Individual Defendants"), positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Plaintiff and the other public shareholders of ARCT and owe Plaintiff and the other members of the Class the duties of good faith, fair dealing, loyalty and full and candid disclosure.

24.     By virtue of their positions as directors and/or officers of ARCT, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause ARCT to engage in the practices complained of herein.

25.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the directors of a

8

publicly traded company undertake a transaction that may result in a change in corporate control, the directors must take all steps reasonably required to maximize the value shareholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the shareholders to make an informed voting decision.  To diligently comply with this duty, the directors of a corporation may not take any action that:

(a)        adversely affects the value provided to the corporation's shareholders;

(b)        contractually prohibits them from complying with or carrying out their fiduciary duties;

(c)        discourages or inhibits alternative offers to purchase control of the corporation or its assets; or

(d)        will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders.

26.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated duties owed to Plaintiff and the other public shareholders of ARCT, including their duties of loyalty, good faith and independence, insofar as they, *inter alia*, engaged in self-dealing and obtained for themselves personal benefits, including personal financial benefits, not shared equally by Plaintiff or the public shareholders of ARCT common stock (the "Class").

**DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS**

27.     Plaintiff brings this action derivatively in the right and for the benefit of ARCT to redress injuries suffered and to be suffered by ARCT as a result of the breaches of fiduciary duty and other violations of law by the Individual Defendants.

28.     Plaintiff owns and has owned ARCT common stock at all times relevant hereto. Plaintiff will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting its rights.  Plaintiff has retained counsel experienced in these types of actions to prosecute these claims on the Company's behalf.

29.     Any demand made by Plaintiff to the Board to institute this action would be futile and is excused.  Based on all the allegations in this Complaint and Defendants' actions to date, including the refusal to protect the interests of ARCT and its stockholders, such demand would be a futile and useless act.

30.     ARCT's Board consists of five directors, each of whom is an Individual Defendant herein.  Each of these directors have directly participated in the wrongs complained of herein, which disables them from acting independently, objectively and in good faith to advance the interests of ARCT or respond impartially to a demand by stockholders.  Therefore, the Board is not and cannot be disinterested.

31.     A majority, if not all, of the ARCT directors are so personally and directly conflicted and/or committed to consummating the Proposed Transaction that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

32.     Each of the Individual Defendants served on the Board during the relevant period, and as Board members accordingly, were charged with oversight and operation of the Company and the conduct of its business affairs.  The Board, however, engaged in dereliction of their duties by exercising little or no oversight over the self-interested ARCT management.  Each of the Individual Defendants breached their fiduciary duties owed to ARCT and its stockholders in furtherance of their plan to protect and advance their own interests and those of senior management, at the expense of and to the detriment of ARCT and its public stockholders.

Among other things, the Individual Defendants have agreed to sell the Company at an inadequate price and, in addition, have locked the Company into this unfair deal with preclusive deal protection devices that effectively guarantee that no higher bidder will emerge.

33.     The Individual Defendants have not exercised and cannot exercise independent or objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because each of the directors has participated in and approved the misconduct alleged herein.

34.     Further, a majority of the Individual Defendants have clear and material conflicts of interest and are acting to better their own interests and the interests of ARCT's other senior managers at the expense of the Company and its public shareholders.

35.     The Individual Defendants have demonstrated their unwillingness to act in compliance with applicable law or to sue themselves and/or their fellow directors and executives for failure to do so, as they have developed professional relationships with their fellow Board members and senior officers who are their friends and with whom they have entangling financial alliances, interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any such action.

36.     As with ARCT's conflicted directors, ARCT's senior managers and officers also will reap substantial personal benefits via the Proposed Transaction, as it may trigger the "change of control" provisions in their employment agreements. *See* Registration Statement at 10.  These employment agreements provide for large cash payments and other benefits upon a change of control such as the Proposed Transaction.

37.     ARTC's senior insiders and directors named as Defendants herein have shown their interests to be antagonistic to ARCT and this lawsuit as they have refused to consider in good faith options to increase value for ARCT and its stockholders.

38.     The members of the Board have not and will not authorize a suit against themselves as such a suit would require these Defendants to expose themselves to a huge personal liability to ARCT, as, due to the particular language of currently utilized directors' and officers' liability insurance policies, such an action would not be a covered claim.

39.     The Company's directors' and officers' liability insurance coverage prohibits directors from bringing suits against each other (the "insured vs. insured" exclusion).  Thus, if the Individual Defendants caused the Company to sue its officers and directors for the liability asserted in this case, they would not be insured for that liability.  This they will not do.  The Company's officers' and directors' liability insurance was purchased and paid for with corporate funds for the protection of the Company.

40.     This derivative action does not trigger the "insured vs. insured" exclusion.

41.     Demand is also excused because the Company would be irreparably harmed if the shareholder vote on the Proposed Transaction was permitted to proceed without first affording the relief requested herein.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action on her own behalf and as a class action, pursuant to Maryland Rule 2-231, on behalf of herself and the public shareholders of ARCT (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

43.     This action is properly maintainable as a class action.

44.     The Class is so numerous that joinder of all members is impracticable.  As of September 6, 2012, there were 158,478,679 shares of ARCT common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

12

45.     Questions of law and fact exist that are common to the Class, including, among others:

a.      whether the Individual Defendants have fulfilled and are capable of fulfilling their fiduciary duties owed to Plaintiff and the Class;

b.      whether the Individual Defendants have engaged and continue to engage in a scheme to benefit themselves at the expense of ARCT shareholders in violation of their fiduciary duties;

c.      whether the Individual Defendants are acting in furtherance of their own self-interest to the detriment of the Class;

d.      whether Defendants have disclosed and will disclose all material facts in connection with the Proposed Transaction; and

e.      whether Plaintiff and the other members of the Class will be irreparably damaged if Defendants are not enjoined from continuing the conduct described herein.

46.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

47.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be

dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

48.     Preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate because Defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

49.     On September 6, 2012, ARCT and Realty Income issued a joint press release announcing the Proposed Transaction.  Specifically, the press release announced ARCT's entry into the Merger Agreement with Realty Income whereby Realty Income will acquire all of the Company's outstanding shares in an all-stock transaction with a total equity value of approximately $2.95 billion.  The press release stated in relevant part:

> The acquisition will be financed by Realty Income directly issuing $1.9 billion of its common stock to American Realty Capital Trust shareholders, the assumption of approximately $526 million of debt, and the immediate repayment of approximately $574 million of outstanding debt and transaction expenses. Under the terms of the agreement, American Realty Capital Trust shareholders will receive a fixed exchange ratio of 0.2874 Realty Income shares for each share of American Realty Capital Trust common stock that they own. Based on Realty Income's closing stock price of $42.48 on September 5, 2012, this consideration would be equivalent to $12.21 per share. Upon closing of the transaction, American Realty Capital Trust shareholders are expected to own approximately 25.6% of Realty Income's shares.

50.     Following the consummation of the Proposed Transaction, ARCT will be merged into Merger Sub, with Merger Sub surviving as a wholly owned subsidiary of Realty Income.

51.     The consideration to be paid to Plaintiff and the Class in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of ARCT is materially in excess of the amount offered in the Proposed Transaction.  In fact, the Proposed Transaction provides ARCT with a miniscule premium of merely 2% over its closing price on

14

September 5, 2012.  This premium is drastically out of line with other recent transactions in the industry.  According to *Bloomberg* data, there have been eight purchases involving U.S. REITs this year.  Those transactions included an average premium of 46%.

52.     Furthermore, according to Thomson/First Call, at least one financial analyst valued ARCT common stock at $13.00 per share.  Indeed, Landenburg Thalmann Financial Services, Inc. ("Landenburg Thalmann") valued ARCT at $13 based on the Company's long-term value.  Landenburg Thalmann also stated that Realty Income was not as attractive an investment opportunity as was ARCT, a suggestion of particular significance in the context of a stock-for-stock deal.

53.     As a result of the Proposed Transaction, if consummated, ARCT shareholders will be substantially diluted in the merged company, holding a mere 26.5% of the combined entity.

54.     In connection with the Proposed Transaction, defendants Schorsch and Kahane have entered into a voting agreement with Realty Income to vote all of their stock in favor of the Proposed Transaction.

55.     The Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings, at a time when the Company is poised to increase its profitability.  As a result, the Individual Defendants breached the fiduciary duties they owe to the Company's public shareholders because those shareholders will not receive adequate or fair value for their Company common stock in the Proposed Transaction

**B.  The Preclusive Deal Protection Devices**

56.     Moreover, to the detriment of ARCT's shareholders, the Merger Agreement's terms substantially favor Realty Income and are calculated to unreasonably dissuade potential suitors from making competing offers.

57.     The Merger Agreement does not contain a "collar" guaranteeing ARCT's shareholders a minimum dollar threshold for their shares under the Exchange Ratio.  Thus, they are at the mercy of the value of Realty Income shares at the "Effective Time" as defined in the Merger Agreement, which may be affected by numerous factors and therefore have little or no relationship to the value of their ARCT shares at that time.  Indeed, since September 6, 2012, Realty Income stock has declined from a closing price of $42.21 per share, to a closing price of $40.76 per share on October 1, 2012, already representing diminished value for ARCT shareholders.

58.     The Individual Defendants are additionally impeding the possibility that the Company will pursue a superior proposal with the inclusion of a "No Solicitation" provision within the Agreement.  The provision prohibits the Company and any of its representatives from soliciting, initiating or knowingly encouraging any inquiries or discussions that constitute, or could reasonably be expected to constitute, an acquisition proposal.  It further requires the Company and any of its representatives to immediately cease all discussions or negotiations with any person with respect to any acquisition proposal. This provision effectively forecloses the possibility that the Company would receive a superior bid.

59.     Additionally, Section 6.5(c) requires that the Company notify Parent within 24 hours after receipt of any acquisition proposal or any request for nonpublic information relating to the Company or any Inquiry seeking to have discussions or negotiations with the Company relating to a possible acquisition proposal.  It further adds that "[s]uch notice shall be made orally and confirmed in writing, and shall indicate the identity of the Third Party making the Company Acquisition Proposal, request or Inquiry and the material terms and conditions of any Company Acquisition Proposals, Inquiries, proposals or offers."

60.     Also, should the Company receive a superior proposal, Section 6.5(e) requires that Income Realty be given five (5) business day period following receipt of a notice of a superior proposal to negotiate with the Company in good faith, to the extent Parent and Merger Sub desire to negotiate, to make such adjustments in the terms and conditions of this Agreement so that such Superior Proposal ceases to constitute a Superior Proposal.  Accordingly, the Merger Agreement unfairly assures that any "auction" will favor Income Realty and piggy-back upon the due diligence of the foreclosed alternative bidder.

61.     The Proposed Transaction further provides for a "Termination Fee" of $51,000,000 to be paid in cash if the Agreement is terminated by the Company or by Income Realty pursuant to the terms of the Merger Agreement, including in the event that Company decides to pursue a superior offer.  The Termination Fee essentially requires that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer. It is thus unlikely that any such superior offer would emerge.

62.     Ultimately, these preclusive deal protection devices impede the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited alternative acquisition proposal that constitutes, or would reasonably be expected to constitute, a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

C.      **The Inadequate Registration Statement**

63.     On October 1, 2012, Realty Income filed the Registration Statement which provides some discussion of the history of the negotiations between Realty Income and ARCT. However, the Registration Statement is woefully deficient, in that material information has not

been provided to ARCT stockholders in order for them to decide whether to approve the Proposed Transaction.

64.     According to the Registration Statement, four investment banks gave separate presentations to the Board on May 17, 2011.  At the meeting, the investment banking teams discussed various strategic alternatives to be considered by the ARCT Board.  However, the Registration Statement fails to disclose the nature of those strategic alternatives.

65.     During the summer of 2011, Realty Income expressed its interest in possibly acquiring the portfolio of 258 properties held by ARCT; however, following consultation with ARCT management and the ARCT Board, Goldman Sachs informed Realty Income's Chief Investment Officer, John Case ("Case"), that ARCT did not view the proposal as being in the best interest of ARCT's stockholders.  The Registration Statement fails to disclose the underlying rationale for such belief and why ARCT did not believe such alternative was worth further exploration.

66.     On January 23, 2012, the ARCT Board agreed to form a special committee to be composed of the "independent directors" of the ARCT Board, the purpose of which would be to deliberate on ARCT's strategic alternatives.  However, the Registration fails to disclose who specifically was appointed to the special committee and how the independence of the directors was determined.  As each of defendants Michelson, Stanley and Burns serve on numerous boards related to defendants Schorsch and Kahane, they are incapable of exercising the impartiality required.

67.     On February 20, 2012, ARCT's management informed the Board that a proposal from Income Realty might be forthcoming.  However, the Registration Statement fails to disclose the nature of any discussions that led ARCT's management to this conclusion, or indeed, the identity of the "management".

68.     Following Realty Income's non-binding indicative proposal of February 21, 2012, ARCT communicated to Realty Income that it would decline to proceed with further negotiations, in part, because the proposal failed to take into consideration any negative tax repercussions to ARCT's stockholders.  The Registration Statement fails to disclose the nature of any potential tax repercussions and their potential effect on shareholders.

69.     On August 9, 2012, after Case contacted Schorsch to indicate Realty Income's continued interest in a transaction, Schorsch stated that any offer much provide for the sale of the entire company.  However, the Registration Statement fails to disclose why ARCT was only willing to consider a transaction in which the entire company was sold.

70.     On August 10, 2012, Case and Schorsch continued to discuss a possible strategic transaction between Realty Income and ARCT.  The Registration Statement fails to disclose why, after restarting negotiations with Realty Income, ARCT decided not to reach out to any other entities to evaluate potential third party interest.

71.     In addition to failing to disclose the information described above in paragraphs 50 through 56, the Registration Statement also contains material omissions in the summary analyses of Bank of America Merrill Lynch ("Merrill Lynch") and Wells Fargo Securities, LLC ("Wells Fargo)", Realty Income's financial advisors, and Goldman, Sachs & Co. ("Goldman Sachs"), ARCT's financial advisor, including the following:

(a)     The Registration Statement fails to disclose the ratios and multiples observed by Wells Fargo and Goldman Sachs for each of the companies in their respective *Selected Companies Analyses*. Similarly, in Merrill Lynch's *Selected Publicly Traded Companies Analysis* for both ARCT and Realty Income, the Registration Statement fails to disclose the ratios and multiples observed by Merrill Lynch for each of the selected companies. This information is material, because shareholders are forced to rely on relatively limited

information, and, without further disclosure regarding these selected companies, they will be unable to properly determine how comparable each of the selected companies are;

       (b)    In the *Selected Precedent Transactions Analysis*, Merrill Lynch analyzed six transactions involving REITs in the net lease sector, disclosing the overall low and high multiples of the six transactions.  However, the Registration Statement fails to disclose the relevant multiples for each of the precedent transactions, which is material to shareholders so they can make a determination as to whether the multiples, and thus the selected transactions, are comparable in both scope and time;

       (c)    The Registration Statement fails to disclose, in Merrill Lynch's *Discounted Cash Flow Analysis* ("DCF"), the synergies that Merrill Lynch considered in its analysis, the treatment of any stock-based compensation and of net operating losses ("NOLS"), if any.  Additionally, it fails to disclose the underlying rationale for selecting ARCT's range of perpetuity growth rates of 0.75% to 1.25%.  Absent such information, ARCT shareholders will be unable to determine whether the DCF is reliable;

       (d)    In the *Dividend Discount Analysis* performed by Merrill Lynch, the Registration Statement fails to disclose "other things" upon which Merrill Lynch relied when selecting a perpetual dividend growth rate range.  Without this information, shareholders will be unable to determine the critical factors relied upon by Merrill Lynch, and thus whether the analysis is reliable;

       (e)    In the *Dividend Discount Analysis* performed by Wells Fargo, the Registration Statement fails to disclose the basis upon which Wells Fargo chose to apply multiples of 14x to 17x and the basis upon which Well Fargo chose to apply a discount rate range of 9% to 10%, without which shareholders will be unable to determine if the analysis is reliable;

(f)      In the *Miscellaneous* section of Wells Fargo's analyses, the Registration Statement fails to disclose what portion of Wells Fargo's aggregate fee of $3.5 million is contingent upon consummation of the merger.  It additionally fails to disclose whether Merrill Lynch has provided any services to ARCT during the preceding two years.  This information is material to a shareholder's determination of how much weight to place on the analyses of the financial advisor;

(g)      In the *Illustrative Present Value of Future Return Analysis,* Goldman Sachs devised hypothetical future share prices for ARCT common stock by applying an illustrative range of price/adjusted funds from operations ("AFFO") multiples of 12x to 15x to ARCT's estimated AFFO per share for 2013-2017.  However, the Registration Statement fails to disclose why Goldman Sachs chose to apply this range of multiples.  Without this information, ARCT shareholders will be unable to properly determine if the analysis is reliable;

(h)      In the *Illustrative Dividend Discount Analysis*, Goldman Sachs performed a sensitivity analysis in which it applied discount rates ranging from 8.25% to 9.25% to ARCT's estimated dividends per share for the 2013-2017 (which projected financial information was prepared by ARCT management) and also to ARCT's illustrative terminal values which were derived by applying perpetuity growth rates ranging from 1% to 3% to the Company's estimated dividend per share for the year 2017.  The Registration Statement fails to disclose Goldman Sachs' basis for applying these discount rates and perpetuity growth rates, information necessary to a shareholder in determining whether the analysis is reliable;

(i)      In the *Selected Precedent Transactions Analysis* performed by Goldman Sachs, the Registration Statement fails to disclose the relevant multiples for each of the transactions, which is material to shareholders so they can make a determination as to whether the multiples, and thus the selected transactions, are reliable;

(j)      The Registration Statement fails to disclose, in the *Illustrative Accretion/Dilution Analysis* performed by Goldman Sachs, the synergies estimated by Realty Income's management that would result from the merger, an estimate which was provided to Goldman Sachs by Realty Income.  This information is material to a determination of whether the analysis is reliable and whether the consideration of the transaction is fair;

(k)      The Registration Statement fails to disclose whether Goldman Sachs has performed any services for Realty Income and, if so, the amount of compensation received.  This is material in a shareholder's determination of how much weight to place upon the analyses provided by a Goldman Sachs;

(l)      The Registration Statement further fails to quantify the amount of ARCT's capital expenditures considered in any of the analyses performed by any of the financial advisors.  Capital expenditures are a material part of ARCT's business and a material component underlying a number of the analyses performed by the financial advisors and is necessary to a shareholder's understanding of the Proposed Transaction and the analyses performed;

(m)      The Registration Statement fails to disclose the results of Goldman Sachs' *Discounted Cash Flow Analysis* or even whether such an analysis was undertaken, material information upon which shareholders rely when considering the strength of their investment in the Company; and

(n)      While the Registration Statement contains limited disclosure of projected financial information, it fails to disclose free cash flow as estimated by ARCT management, or any of the important metrics used to extrapolate free cash flow, including depreciation and amortization and capital expenditures.

**D.      Interests of Certain Individual Defendants in the Proposed Transaction**

72.      In connection with the Proposed Transaction, ARCT and  ARCT OP  and AR Capital, an entity majority-owned and controlled by  Schorsch, chairman of the board of directors of ARCT, and Kahane, ARCT's chief executive officer, president and a director, entered into an Incentive Listing Fee Note Agreement, dated as of September 6, 2012, by and among ARCT, ARCT OP, and AR Capital, as amended by a First Amendment to Incentive Listing Fee Note Agreement on September 10, 2012 ("the Incentive Listing Fee Note Agreement") and a letter agreement, dated September 6, 2012, between Realty Income and AR Capital, pursuant to which the parties agreed to modify the terms of the Subordinated Incentive Listing Fee Note (as defined below), if and to the extent issued, to (i) add a cap of $76,000,000 on its principal amount, (ii) add a floor of $58,600,000 on its principal amount, (iii) provide that, until October 31, 2012, such note shall be due and payable upon demand on not less than five (5) business days' prior written notice by AR Capital and (iv) eliminate AR Capital's right to convert the principal amount of the Subordinated Incentive Listing Fee Note into shares of ARCT's common stock at maturity based on the volume-weighted average of the daily volume-weighted average price, as reported by Bloomberg Financial, increased by the cumulative ARCT dividends paid during the measurement period for each day following the ex-dividend date of each respective dividend on September 5, 2012 and October 3, 2012, as declared by NASDAQ, of the shares issued and outstanding at the Listing, as described below, over the 30 trading days beginning 180 days after the Listing (which measurement period commenced August 28, 2012 and ends October 9, 2012).   Schorsch and Kahane have a substantial interest in the timing and execution of the Incentive Listing Fee Note Agreement.

73.      In connection with the Proposed Transaction, on September 5, 2012, ARCT entered into a letter agreement  with Realty Capital Securities, LLC, ("RC Securities"), and ARC

Advisory Services, LLC, (" ARC Advisory Services"), to act as non-exclusive financial advisor and information agent, respectively, to ARCT in connection with the Proposed Transaction and the related proxy solicitation seeking approval of the merger by ARCT's stockholders and to pay an aggregate amount of $1,500,000 in consideration for the services provided under the letter agreement and such fee will be payable upon the closing of the merger; provided that if the merger is not consummated, ARCT will be responsible for the payment of such fee. The letter agreement is subject to the expense cap under the terms of the side letter.

74.     In connection with the Proposed Transaction, on September 5, 2012, ARCT and the ARCT OP entered into a Legal Services Agreement with ARC Advisory Services, pursuant to which ARCT, on its own behalf and, as general partner of the ARCT OP, on behalf of the ARCT OP, retained ARC Advisory Services to perform legal support services in connection with the Merger Agreement. ARCT and the ARCT OP will pay to ARC Advisory Services an aggregate amount of $350,000 in consideration for the services provided under the Legal Services Agreement; provided that if the Proposed Transaction does not occur, ARCT will be responsible for the payment of such fee.

75.     In connection with the Proposed Transaction, on September 5, 2012, ARCT and the ARCT OP entered into a Legal Services Reimbursement Agreement with ARC Advisory Services, pursuant to which ARCT, on its own behalf and, as general partner of the ARCT OP, on behalf of the ARCT OP, reaffirmed the retention of ARC Advisory Services for the performance of legal support services in connection with the merger agreement rendered prior to the date of the Legal Services Reimbursement Agreement. ARCT and the ARCT OP will pay to ARC Advisory Services an aggregate amount of $1,200,000 in consideration for the services provided under the Legal Services Reimbursement Agreement. The Legal Services Reimbursement Agreement is subject to the expense cap under the terms of the side letter.

76.     In connection with the Proposed Transaction, on September 5, 2012, ARCT and the ARCT OP entered into a Transition Services Agreement with ARC Advisory Services, pursuant to which ARC Advisory Services and ARCT, on its own behalf and, as general partner of the ARCT OP, on behalf of the ARCT OP, memorialized ARC Advisory Services' obligation to perform the following services, which it has historically performed for, and for which it has historically been compensated by, ARCT and the ARCT OP: legal support, accounting support, marketing support, acquisition support, investor relations support, public relations support, event coordination, human resources and administration, general human resources duties, payroll services, benefits services, insurance and risk management, information technology services, telecom and internet services and services relating to office supplies. The Transition Services Agreement does not govern any legal support services rendered in connection with the Merger Agreement and its related transactions, which will be governed by the Legal Services Agreement and the Legal Services Reimbursement Agreement. ARCT and the ARCT OP will pay to ARC Advisory Services the actual costs and expenses incurred by ARC Advisory Services in connection with providing the services contemplated by the Transition Services Agreement.

77.     Some of the officers of ARCT, including Kahane, are entitled to certain contractual "change of control" payments, benefits and incentive awards in connection with the Proposed Transaction.

78.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## FIRST CAUSE OF ACTION

### Derivative Claim For Breach of Fiduciary Duty Against the Individual Defendants

79.     Plaintiff repeats all previous allegations as if set forth in full herein.

80.     As directors of ARCT, the Individual Defendants stand in a fiduciary relationship to the Company and are obligated to conduct the business of the Company with care, loyalty, independence and in good faith.  This cause of action is asserted based upon the Defendants' acts in violation of state law, which acts constitute a breach of fiduciary duty and waste of the Company's corporate assets.

81.     The Defendants have violated the fiduciary duties of care, loyalty, and independence owed to ARCT and have acted to put their personal interests and the interests of Reality Income ahead of the interests of ARCT.

82.     The Individual Defendants have violated their fiduciary duties by agreeing to the Proposed Transaction without regard to the fairness of the Proposed Transaction to ARCT.  By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as part of a common plan, usurped ARCT's assets for themselves, as demonstrated by the allegations above, the Individual Defendants knowingly or recklessly failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to ARCT.

83.     As a direct and proximate result of the Individual Defendants' conduct, ARCT will suffer irreparable harm if the Proposed Transaction proceeds.

## SECOND CAUSE OF ACTION

**On Behalf of Plaintiff and the Class Against the Individual Defendants
for Breach of Fiduciary Duties**

84.     Plaintiff repeats and realleges each allegation set forth herein.

85.     The Individual Defendants have violated fiduciary duties of care, loyalty, candor and good faith owed to public shareholders of ARCT.

86.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in ARCT.

87.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of ARCT because, among other reasons, they failed to take steps to maximize the value of ARCT's public shareholders, by, among other things, failing to adequately consider potential acquirers, instead favoring their own, or their fellow directors' or executive officers' interests to secure all possible benefits with a friendly suitor, rather than protect the best interests of ARCT's shareholders.  Moreover, the Individual Defendants failed to secure safeguards on behalf of the Company's shareholders against the decline in the value of the stock component of the consideration to be paid to ARCT's shareholders in the Proposed Transaction.

88.     The Individual Defendants dominate and control the business and corporate affairs of ARCT, and are in possession of private corporate information concerning ARCT's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of ARCT which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing shareholder value.

89.     Moreover, the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding the Proposed Transaction.

90.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

91.     As a result of the actions of Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of ARCT's assets and businesses and have been and will be prevented from obtaining a fair price for their common stock.

92.     Unless Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

93.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

### THIRD CAUSE OF ACTION

**On Behalf of Plaintiff and the Class**
**Against ARCT and Reality Income for Aiding and Abetting the**
**Individual Defendants' Breach of Fiduciary Duty**

94.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

95.     ARCT and Reality Income have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to ARCT's public shareholders, and have participated in such breaches of fiduciary duties.

96.     ARCT and Reality Income knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, ARCT and Reality Income rendered

substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

## FOURTH CAUSE OF ACTION

### On Behalf of Plaintiff for Violations of Sections 14(a) and of the Exchange Act
### (Against the Company and the Individual Defendants)

97.     Plaintiff brings this Exchange Act claim on behalf of herself as an individual.

98.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

99.     Defendants have issued the Registration Statement with the intention of soliciting shareholder support for the Proposed Transaction.

100.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time an in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

101.    Specifically, the Registration Statement violates Section 14(a) and Rule 14a-9 because it omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render it non-misleading.

102.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. As a direct and proximate result of Defendants' conduct, Plaintiff will be irreparably harmed.

## FIFTH CAUSE OF ACTION

### On Behalf of Plaintiff for Violations of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

103.     Plaintiff brings this Exchange Act claim on behalf of herself as an individual.

104.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

105.     The Individual Defendants acted as controlling persons of ARCT within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of ARCT, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

106.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

107.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Merger. They were, thus, directly involved in the making of this document.

108.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

109.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

110.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

111.     Plaintiff has no adequate remedy at law.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

A.     Declaring this action to be a class and derivative action and certifying Plaintiff as the Class representatives and her counsel as Class counsel;

B.     Preliminarily and permanently enjoining the Proposed Transaction;

C.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Declaring that demand is futile;

E.     Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

F.      Awarding Plaintiff the costs of this action, including reasonable allowance for the

fees and expenses of Plaintiff's attorneys and experts; and

G.      Granting Plaintiff and other members of the Class such further relief as this Court

may deem just and proper.

Dated:  November 29, 2012                    Respectfully submitted,

                                             DEHAY & ELLISTON LLP

                                             /s/ Patrick C. Smith
                                             Patrick C. Smith (Bar No. 02054)
                                             36 South Charles Street
                                             Suite 1300
                                             Baltimore, Maryland 21201
                                             psmith@dehay.com
                                             Telephone:    410-783-7225
                                             Facsimile:    410-783-7221

                                             **FARUQI & FARUQI, LLP**

                                             Juan E. Monteverde
                                             369 Lexington Avenue, 10th Fl.
                                             New York, New York 10017
                                             Tel: 212-983-9330
                                             Fax: 212-983-9331

                                             *Counsel for Plaintiff*