**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND**

| | |
|---|---|
| SYDELLE GOLDWURM,<br>Individually and on behalf of all others<br>similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>AMERICAN REALTY CAPITAL TRUST,<br>INC., *et al.*,<br><br>       Defendants. | Case No. 1:12-cv-03516-JKB |

**DEFENDANTS REALTY INCOME CORPORATION AND TAU ACQUISITION,
LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION AND SUMMARY OF MOTION ...........................................................1

II.   CLAIMS AND ALLEGATIONS .......................................................................................3

    A.   The Proposed Merger ...............................................................................................3

    B.   The Arm's-Length Negotiation Process ..................................................................3

    C.   Plaintiff's Aiding and Abetting Claim ....................................................................6

III.   LEGAL ARGUMENT .......................................................................................................6

    A.   Standards of Pleading .............................................................................................6

    B.   Plaintiff Has Not Alleged a Predicate Breach of Fiduciary Duty ...........................8

    C.   Plaintiff's Allegations of Arm's-Length Negotiation Negate Any Inference of "Knowing Participation" .........................................................................................9

    D.   Plaintiff's Conclusory Allegations Do Not Support Any Inference of "Knowing Participation" .......................................................................................10

IV.   CONCLUSION ................................................................................................................15

OC\1500655.1DMEAST #16121369 v1

# TABLE OF AUTHORITIES

Page

## CASES

*Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*,
  340 Md. 176 (1995) .................................................................................................. 8

*Arnold v. Society for Sav. Bancorp, Inc.*,
  No. 12883, 1995 WL 376919 (Del. Ch. June 15, 1995) .......................................... 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 6, 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................. 6, 7

*Brook v. Acme Steel Co.*,
  No. 10276, 1989 WL 51674 (Del. Ch. May 11, 1989) ............................................ 11

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) .................................................................................... 7

*Full Value Partners, L.P. v. Neuberger Berman Real Estate Income Fund, Inc.*,
  No. AMD 04-3399, 2005 WL 885421 (D. Md. Apr. 18, 2005) ................................. 7

*Globis Partners, L.P. v. Plumtree Software Inc.*,
  No. 1577-VCP, 2007 WL 4292024 (Del. Ch. Nov. 30, 2007) ................................. 15

*Holmes v. Young*,
  885 P.2d 305 (Colo. Ct. App. 1994) ........................................................................ 8

*In re Cogent, Inc. S'holder Litig.*,
  7 A.3d 487 (Del. Ch. 2010) .................................................................................... 13

*In re Frederick's of Hollywood, Inc. S'holder Litig.*,
  No. 15944, 1998 WL 398244 (Del. Ch. July 9, 1998) ........................................... 10

*In re General Motors (Hughes) S'holder Litig.*,
  No. 20269, 2005 WL 1089021 (Del. Ch. May 4, 2005) ................................ 9, 11, 12

*In re Humphrey Hospitality Trust, Inc. Sec. Litig.*,
  219 F. Supp. 2d 675 (D. Md. 2002) .......................................................................... 4

*In re Lukens Inc. S'holder Litig.*,
  757 A.2d 720 (Del. Ch. 1999) ................................................................................ 10

ii

*In re Nationwide Health Prop., Inc. S'holder Litig.*,
No. 24-C-11-001476, 2011 Md. Cir. Ct. LEXIS 3 (Md. Cir. Ct. May 27, 2011) ......... 13, 14, 15

*In re Openlane, Inc. S'holder Litig.*,
No. 6849-VCN, 2011 WL 4599662 (Del. Ch. Sept. 30, 2011) .................................................. 14

*In re PEC Solutions, Inc. Sec. Litig.*,
418 F.3d 379 (4th Cir. 2005) ....................................................................................... 4

*In re Terra Indus. S'holder Litig.*,
No. 24-C-10-001302, 2010 Md. Cir. Ct. LEXIS 9 (Md. Cir. Ct. July 14, 2010) ...................... 13

*Jasinover v. Rouse Co.*,
No. 13-C-04-59594, 2004 WL 3135516 (Md. Cir. Ct. Nov. 4, 2004) ................................... 13

*Katell v. Morgan Stanley Grp., Inc.*,
No. 12343, 1993 WL 10871 (Del. Ch. Jan. 14, 1993) ............................................................. 11

*Kloth v. Microsoft Corp.*,
444 F.3d 312 (4th Cir. 2006) ........................................................................................ 7

*Kramer v. Liberty Prop. Trust*,
408 Md. 1 (2009) .............................................................................................................. 9

*Lefkoe v. Jos. A. Bank Clothiers*,
No. WMN-06-1892, 2008 WL 7275126 (D. Md. May 13, 2008) ............................................. 4

*Malpiede v. Townson*,
780 A.2d 1075 (Del. 2001) ...................................................................................... 10, 11

*McGowan v. Ferro*,
No. 18672-NC, 2002 WL 77712 (Del. Ch. Jan. 11, 2002) .................................................. 9, 12

*Nebenzahl v. Miller*,
No. 13206, 1996 WL 494913 (Del. Ch. Aug. 26, 1996) ......................................................... 11

*Orman v. Cullman*,
No. 18039, 2004 WL 2348395 (Del. Ch. Oct. 20, 2004) ....................................................... 13

*Puzey v. BJ's Wholesale Club, Inc.*,
No. 11-11339-MLW, 2012 WL 1114164 (D. Mass Mar. 31, 2012) .......................................... 7

iii

*Quraishi v. Shalala,*
   962 F. Supp. 55 (D. Md. 1997) ............................................................................... 6

*Shenker v. Laureate Educ., Inc.,*
   411 Md. 317 (2009) ................................................................................... 2, 9, 10

*Skeen v. Jo-Ann Stores,* Inc.,
   No. 16863, 1999 WL 803974 (Del. Ch. Sept. 27, 1999), *aff'd,* 750 A.2d 1170 (Del. 2000) .... 14

*Tomran, Inc. v. Passano,*
   391 Md. 1 (2006) ....................................................................................................... 7

*Wahi v. Charleston Area Med. Ctr., Inc.,*
   562 F.3d 599 (4th Cir. 2009) ................................................................................. 7

*Werbowsky v. Collomb,*
   362 Md. 581 (2001) ................................................................................................. 9

## RULES

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 7

Fed. R. Evid. 201(b)(2) ............................................................................................... 4

OC\1500655.1DMEAST #16121369 v1

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants Realty Income Corporation and its wholly owned subsidiary Tau Acquisition, LLC (jointly, "Realty Income") respectfully submit this memorandum of law in support of their motion to dismiss with prejudice Plaintiff's "aiding and abetting" claim for failure to state a claim upon which relief can be granted.  This motion to dismiss is submitted in the alternative to Defendants' motion to stay this action filed on December 13, 2012 because this action is duplicative of a consolidated, earlier filed class action pending before Judge Audrey J. S. Carrion in the Circuit Court of Baltimore City, Maryland (the "State Action").  Defendants earlier filed motions to dismiss the State Action.[1]  Accordingly, if Defendants' motion to stay this action is granted, this Court need not duplicate the efforts of the state court in reaching the merits of this motion to dismiss.

## I.    INTRODUCTION AND SUMMARY OF MOTION

As a matter of law, Plaintiff's own allegations defeat her sole claim against Realty Income for supposedly "aiding and abetting" breaches of fiduciary duty by the Board of Directors of American Realty Capital Trust, Inc. ("ARCT").  As the Complaint[2] shows, Realty Income engaged in arm's-length negotiations in its own interest on the price and terms of a proposed merger with ARCT.  Even if Plaintiff, as an alleged stockholder of ARCT, does not like the terms of the proposed merger, she is free to cast a stockholder's vote of "no."  But she

---

[1]   Plaintiffs in the State Action subsequently filed a consolidated amended complaint, and Defendants intend to refile motions to dismiss in state court addressing this complaint.

[2]   References to the Complaint or "Compl." refer to Plaintiff's Class Action and Derivative Complaint filed in this federal action on November 29, 2012.

1

has alleged no legal or factual basis—and none exists—to hold Realty Income liable to the stockholders of ARCT for negotiating in its own lawful business interests.

Plaintiff filed this duplicative lawsuit after losing her fight to be appointed lead plaintiff in an earlier-filed, consolidated class action pending before the Circuit Court for Baltimore City, Maryland.  This federal action, like the Maryland State Action, alleges that the ARCT directors breached their fiduciary duties under Maryland law in approving a proposed $2.95 billion merger with Realty Income and in failing to disclose factual details in a proxy statement soliciting a stockholder vote on the merger.  Plaintiff's claim that Realty Income somehow "aided and abetted" these alleged breaches is deficient as a matter of law.  Foremost, Plaintiff has not alleged facts showing any underlying breach of fiduciary duty by the ARCT directors, as shown in ARCT's motion to dismiss in which Realty Income joins.  There can be no liability for "aiding and abetting" a non-existent breach of fiduciary duty.

Moreover, as a matter of applicable Maryland law, an arm's-length acquirer has <u>no liability</u> to a target company's stockholders for negotiating a price and terms in the acquirer's own interest.  *See Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 353 (2009) (affirming dismissal of "aiding and abetting" claim based on conduct "normally attendant" to negotiation in pursuit of an acquisition).  Plaintiff's allegations show that the proposed merger was the product of a competitive, arm's-length negotiation between ARCT and Realty Income, each separately advised by their own legal counsel and financial advisors.  Compl. ¶¶ 63-71.  In short, Plaintiff's "aiding and abetting" claim against Realty Income is fatally defective as a matter of law and should be dismissed.

2

## II.   CLAIMS AND ALLEGATIONS

### A.   The Proposed Merger

ARCT and Realty Income are both publicly traded Maryland real estate investment trusts. *Id*. ¶¶ 13, 19.  According to Plaintiff, Realty Income "owns more than 2,600 properties under long term lease agreements with 136 leading regional and national retail chains and other commercial enterprises" and is listed on the New York Stock Exchange.  *Id*. ¶ 19.  ARCT is publicly traded on NASDAQ and has "a portfolio [] comprised of long-term, net leases with primarily investment grade tenants."  *Id*. ¶ 13.

Since at least May 2011, ARCT has been looking into the prospect of "strategic alternatives," including various third-party partnerships.  See i*d*. ¶ 64.  Finally, on September 6, 2012, ARCT announced a merger with Realty Income.  *Id*. ¶¶ 2, 49.  The terms of the merger agreement call for consideration valued at $2.95 billion, including $1.9 billion in Realty Income common stock to be issued to the ARCT stockholders in exchange for their shares.  *Id*.  This implies a sales price for ARCT stock of about $12.21 per share (based on the exchange ratio). *Id*.  ARCT stockholders are expected to own more than 25% of Realty Income after the merger. *Id*. ¶ 49.  The merger is contingent upon approval by a vote of the stockholders of both public companies.  *See id*. ¶¶ 7, 49.

### B.   The Arm's-Length Negotiation Process

The proposed merger is the result of a competitive negotiation over many months in which ARCT invited other potential acquirers to participate.  *Id*. ¶ 63-70.  Plaintiff recaps the competitive process leading to the merger agreement as detailed in the October 1, 2012 joint

3

proxy statement filed by ARCT and Realty Income.  *Compare* Compl. ¶¶ 63-70 *with* Ex. A at 53-64.[3]  Plaintiff quibbles that even more detail should have been disclosed, but she alleges nothing to suggest that the negotiation process was anything other than arm's-length.  Compl. ¶¶ 63-70.

In May 2011, the ARCT board retained Goldman, Sachs & Co. ("Goldman Sachs") to represent the company in a possible sale.  *See* Compl. ¶¶ 64-65; Ex. A at 54.  Goldman Sachs reached out to more than 40 third parties regarding their interest in ARCT, 18 of whom executed confidentiality agreements in order to review non-public information regarding ARCT's business.  *See* Compl. ¶ 64; Ex. A at 54.  Six parties (including Realty Income) submitted non-binding indications of interest.  *See* Ex. A at 54.

---

[3]  Plaintiff's Complaint cites to the joint proxy statement/prospectus that was filed with the Securities and Exchange Commission ("SEC") on October 1, 2012 by Realty Income and ARCT, containing a recommendation by the ARCT board that the ARCT stockholders should approve the proposed merger (the "Registration Statement").  The Registration Statement was subsequently amended four separate times between November 2, 2012 and November 29, 2012 (*i.e.*, the date on which Plaintiff filed this action).  On December 6, 2012, Realty Income and ARCT filed a definitive joint proxy statement with the SEC, which also contains a recommendation by the ARCT board that the ARCT stockholders should approve the proposed merger (the "Joint Proxy").  Attached as Exhibit A is the Joint Proxy. This Court should take judicial notice of the Joint Proxy pursuant to Federal Rule of Evidence 201.  *See* Fed. R. Evid. 201(b)(2) (judicial notice may be taken of any adjudicative fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").  Judicial notice of publicly available documents that have been filed with the SEC is particularly appropriate where the filing is referenced in the complaint, here.  *See, e.g., In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 388 n.7, 390 n.10 (4th Cir. 2005) (observing, in a securities fraud case, that the Fourth Circuit allows a court to examine a public document relied on in the complaint without converting a motion to dismiss into a motion for summary judgment; holding further that a court can take judicial notice of SEC filings); *Lefkoe v. Jos. A. Bank Clothiers*, No. WMN-06-1892, 2008 WL 7275126, at *4, 8 (D. Md. May 13, 2008) (court may take judicial notice of documents referenced in the complaint and in SEC filings); *In re Humphrey Hospitality Trust, Inc. Sec. Litig.*, 219 F. Supp. 2d 675, 684 (D. Md. 2002) (court may take judicial notice of SEC filings, even if they are not attached to the complaint).

In the summer of 2011, Realty Income made offers to buy ARCT's real estate portfolio, but the ARCT board rejected the offers as not "being in the best interest of ARCT's stockholders."  Compl. ¶ 65; Ex. A at 55.  Discussions broke off.  *See* Ex. A at 55-56.  In January 2012, Goldman Sachs solicited Realty Income's continued interest in ARCT.  *See* Ex. A at 56.  In February, 2012, Realty Income made a non-binding proposal to buy ARCT for $10.25 per share, which the ARCT board again rejected as inadequate.  Compl. ¶¶ 67-68; Ex. A at 57.

On March 1, 2012, ARCT completed an initial public offering ("IPO") at $10 per share and its stock was listed on NASDAQ.  Ex. A at 57-58.  Meanwhile, in this time frame, "Party A" contacted Goldman Sachs, expressed interest in ARCT and reviewed non-public documents, but would not offer more than ARCT's IPO price.  *See* Ex. A at 57.

On August 9, 2012, Realty Income reached out again to ARCT and expressed an interest in buying the company.  Compl. ¶ 69; Ex. A at 58.  Over the next several weeks, the parties engaged in extensive negotiations on the potential price and terms.  *See* Compl. ¶¶ 49, 69-70; Ex. A at 58-64.  The ARCT board rejected Realty Income's proposed ratio of exchange of Realty Income stock for ARCT stock, forcing Realty Income to improve its offer.  Ex. A at 60.  The ARCT board also rejected Realty Income's request for a "force-the-vote" provision.  Ex. A at 63.  After extensive back-and-forth negotiations, the parties finally agreed on a price and terms.

The parties' respective boards of directors received analyses from their respective financial advisors regarding the fairness of the price to their respective stockholders.  Compl. ¶ 71; Ex. A at 63-64 (Goldman Sachs advised ARCT, and Bank of America Merrill Lynch and Wells Fargo advised Realty Income).  There is no allegation that the parties were privy to each

5

other's board discussions, analyses, opinions or strategies.  Compl. ¶ 71.  As the Complaint

shows, the parties were arm's-length negotiators.

### C.  Plaintiff's Aiding and Abetting Claim

Plaintiff's "aiding and abetting" claim amounts to a conclusory and unsupported

contention:  Plaintiff alleges that Realty Income "knowingly" "participated in" and "rendered

substantial assistance in order to effectuate [the ARCT board's] plan to consummate the

Proposed Transaction in breach of their fiduciary duties."  *Id.* ¶¶ 95-96.  Plaintiff does not state

what Realty Income "knew," how Realty Income "participated," or what "substantial assistance"

Realty Income rendered.  Plaintiff does not even specify what breach of duty Realty Income

supposedly aided.  The focus of Plaintiff's claim against the ARCT board appears to be price (*id.*

¶¶ 51-55), with a few additional allegations quibbling with deal terms, a voting agreement and

disclosures (*id.* ¶¶ 4, 54, 56-59).  As discussed below, Plaintiff's conclusory allegations do not

state a claim against Realty Income.

## III.  LEGAL ARGUMENT

### A.  Standards of Pleading

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of a complaint and must be granted where the complaint does not allege sufficient

facts under a cognizable legal theory.  *Quraishi v. Shalala*, 962 F. Supp. 55, 57 (D. Md. 1997).

In deciding a motion under Rule 12(b)(6), the Court is not bound to assume the truth of legal

conclusions merely because they are stated in the form of factual allegations.  *Ashcroft v. Iqbal*,

556 U.S. 662, 667 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Court

need not accept "unwarranted inferences, unreasonable conclusions, or arguments," and may dismiss the complaint if it is vague, conclusory, and fails to set forth material facts in support of the allegations. *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).  Courts will not supply essential elements of a claim that are absent; rather, the plaintiff must "plead enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "[W]here the well-pleaded facts do not permit the court to infer more than mere possibility of misconduct, the complaint has alleged—but has not 'shown'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Because ARCT and Realty Income are organized under Maryland law, Maryland substantive law applies to Plaintiff's breach of fiduciary duty and aiding and abetting claims. *See Tomran, Inc. v. Passano*, 391 Md. 1, 17 (2006) ("The internal affairs doctrine provides that the law of the jurisdiction of incorporation governs the rights and responsibilities of the parties involved."); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 350-51 (4th Cir. 1998) (applying state law to breach of fiduciary duty and aiding and abetting claims); *Full Value Partners, L.P. v. Neuberger Berman Real Estate Income Fund, Inc.*, No. AMD 04-3399, 2005 WL 885421, at *3 (D. Md. Apr. 18, 2005) (applying Maryland law to breach of fiduciary duty claim involving a Maryland corporation); *see also Puzey v. BJ's Wholesale Club, Inc.*, No. 11-11339-MLW, 2012 WL 1114164, at *3 (D. Mass Mar. 31, 2012) ("the breach of fiduciary duty and aiding and abetting claims in both cases [] are governed by Delaware law because [the company being acquired] was incorporated in Delaware").

7

In order to state a claim against a non-fiduciary under Maryland law, such as Realty Income, for aiding and abetting a breach of fiduciary duty, a plaintiff must allege both (a) a breach of a fiduciary duty owed to the plaintiff and (b) the non-fiduciary's "knowing participation" in such breach. *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 199-200 (1995), citing with approval *Holmes v. Young*, 885 P.2d 305, 308 (Colo. Ct. App. 1994) (providing elements of "aiding and abetting" breach of fiduciary duty). As discussed below, Plaintiff has alleged neither.

### B.    Plaintiff Has Not Alleged a Predicate Breach of Fiduciary Duty

To state an aiding and abetting claim against Realty Income, Plaintiff first must allege an underlying breach of fiduciary duty by ARCT's board. *See Alleco*, 340 Md. at 200-01 ("civil aider and abettor liability . . . requires that there exist underlying tortious activity in order for the alleged aider and abettor to be held liable"). As shown in the ARCT Defendants' motion to dismiss, Plaintiff has failed to do so. Plaintiff's allegations do not rebut the legal presumption under Maryland corporate law that the ARCT board exercised valid business judgment in setting a strategic path for ARCT and ultimately agreeing to the proposed merger. *See* ARCT Defendants' Motion to Dismiss at 23-44.[4] Absent an underlying breach of fiduciary duty claim, Plaintiff's aiding and abetting claim against Realty Income fails. *Alleco*, 340 Md. at 200-01.

---

[4]    Realty Income will not burden this Court with repetition of the ARCT Defendants' points and authorities, but joins, adopts and incorporates them by reference here.

**C.    Plaintiff's Allegations of Arm's-Length Negotiation Negate Any Inference of "Knowing Participation"**

But even if Plaintiff had alleged a breach of fiduciary duty by the ARCT directors—

which she has not done—the allegations do not support a viable aiding and abetting claim

against Realty Income.  As the Maryland Court of Appeal held in *Shenker*, an acquirer is not

liable for "aiding and abetting" based on nothing more than actions that are "normally attendant"

to "pursuing the [] acquisition of a public corporation."  *Shenker*, 411 Md. at 353.  All of Realty

Income's alleged actions are "normally attendant" to pursuit of an acquisition.  Maryland law is

consistent with Delaware law, quoted below,[5] in holding that an arm's-length acquirer cannot be

held liable for "aiding and abetting" merely by bargaining for a price and terms favorable to the

acquirer and its own stockholders:

> [An acquirer is] entitled to bargain to obtain the best price for itself, and
>
> breached no duty by doing so, even if the result was a price that was unfairly low
>
> from the standpoint of [the target's] stockholders.

*McGowan v. Ferro*, No. 18672-NC, 2002 WL 77712, at *4 (Del. Ch. Jan. 11, 2002) (dismissing

aiding and abetting claim); *see also In re General Motors (Hughes) S'holder Litig.*, No. 20269,

2005 WL 1089021, at *27 (Del. Ch. May 4, 2005) (dismissing aiding and abetting claim where

"the allegations . . . describe arms-length negotiations"); *In re Lukens Inc. S'holder Litig.*, 757

---

[5]    On issues of corporate law, Maryland courts often look to Delaware decisions for guidance. *See Kramer v. Liberty Prop. Trust*, 408 Md. 1, 24 (2009) (holding Delaware law to be persuasive on an issue of Maryland corporations law where there was no clear body of Maryland case law); *Shenker*, 411 Md. at 338 n.14 (*quoting Werbowsky v. Collomb*, 362 Md. 581, 618 (2001)) ("This Court has noted the 'respect properly accorded Delaware decisions on corporate law' ordinarily in our jurisprudence.").

OC\1500655.1DMEAST #16121369 v1

A.2d 720, 735 (Del. Ch. 1999) ("it should be obvious that an offeror may attempt to obtain the lowest possible price for stock through arm's-length negotiations"); *In re Frederick's of Hollywood, Inc. S'holder Litig.*, No. 15944, 1998 WL 398244, at *3 & n.8 (Del. Ch. July 9, 1998) ("arm's-length negotiation with fiduciaries negates a claim of aiding and abetting" and "bidder's attempts to reduce the sale price through arm's-length negotiations cannot give rise to liability for aiding and abetting"), *aff'd sub nom. Malpiede v. Townson*, 780 A.2d 1075, 1097-98 (Del. 2001).

Plaintiff's citations to the parties' Joint Proxy undercut her claim by illustrating the arm's-length nature of the negotiations between Realty Income and ARCT.  ARCT solicited Realty Income's interest in an acquisition as part of a competitive process that began with Goldman Sachs' outreach to more than 40 third parties.  *See* Compl. ¶ 64; Ex. A at 54.  The ARCT board rejected multiple offers and proposals by Realty Income, forcing Realty Income to increase its price and reduce its protections.  *See* Compl. ¶¶ 65, 67-68; Ex. A at 54-63.  The parties and their respective boards of directors strategized with their separate advisors and neither party was privy to the internal decision-making processes of the other.  *See* Compl. ¶¶ 64, 71; Ex. A at 53-64.  These arm's-length negotiations are actions "normally attendant" to "pursuing the [] acquisition of a public corporation" (*Shenker,* 411 Md. at 353) and provide no factual basis for Plaintiff's "aiding and abetting" claim.

> ### D.     Plaintiff's Conclusory Allegations Do Not Support Any Inference of "Knowing Participation"

Finally, Plaintiff has alleged no <u>other</u> facts demonstrating that Realty Income "knowingly participated" in an alleged breach of fiduciary duty by the ARCT board.  Maryland law is not

highly developed on this issue, but Delaware courts have held that to allege "knowing participation" requires allegations of fact demonstrating that (a) the non-fiduciary actually participated in the fiduciary's decision-making, or (b) the breach of fiduciary duty is so "inherently wrongful" that the non-fiduciary must have knowingly enabled it. *General Motors*, 2005 WL 1089021, at *24, *27; *see supra* note 5 (reliance on Delaware law). Plaintiff has not alleged facts to support either theory.

There are no allegations that Realty Income "actually participated" in meetings of the ARCT board or otherwise "injected" itself into the ARCT board's decision-making process. *See General Motors*, 2005 WL 1089021, at *26-27 ("no properly pled allegations" that acquirer "participated in the meetings of the GM board of directors or otherwise injected themselves into the process by which the GM . . . board[] approved the . . . transactions in any manner other than an arms-length bidder"); *Malpiede*, 780 A.2d at 1098 ("no indication . . . that [acquirer] participated in the board's decisions, conspired with [the] board, or otherwise caused the board to make the decisions at issue"); *Brook v. Acme Steel Co.*, No. 10276, 1989 WL 51674, at *1 (Del. Ch. May 11, 1989) (no facts were alleged "from which one might infer" defendant was "privy to, or involved in" the board's deliberations); *Katell v. Morgan Stanley Grp., Inc.*, No. 12343, 1993 WL 10871, at *8 (Del. Ch. Jan. 14, 1993) (no allegation that third party "played any role" in the fiduciaries' deliberations).

Nor do Plaintiff's allegations show that the ARCT board's decisions were "inherently wrongful" so that Realty Income "knowingly" enabled a breach. *Nebenzahl v. Miller*, No. 13206, 1996 WL 494913, at *7 (Del. Ch. Aug. 26, 1996) ("A court can infer a non-fiduciary's

11

knowing participation only if a fiduciary breaches its duty in an inherently wrongful manner, and the plaintiff alleges specific facts from which the court can reasonably infer knowledge of the breach."). Delaware courts have defined "inherently wrongful" as "*per se* illegal" (*General Motors*, 2005 WL 1089021, at *24)—such as, for example, side payments obviously designed "to induce the fiduciary into ignoring his fiduciary duties." *McGowan*, 2002 WL 77712, at *3. There is nothing "inherently wrongful" about any of the actions or decisions that Plaintiff is complaining about—*i.e.*, the price, "deal protection" provisions, a voting agreement, and the level of detail in the disclosures. Compl. ¶¶ 51-71.

As for the price, there is nothing "inherently wrongful" with an exchange ratio of $12.21 per share for ARCT stock. *Id*. ¶¶ 2, 49. That ratio is 20% more than ARCT's IPO price of $10 only a few months earlier than the deal date and higher than the public trading price when the deal was announced. The ARCT stockholders will keep their investment in more than 25% of Realty Income. *Id*. at ¶ 49. Plaintiff herself alleges that the ARCT board's negotiations forced a higher price. *Id*. at ¶¶ 65, 67-68.

As for the so-called "deal protection" provisions—the "no shop" provision, "information rights" provision, "matching rights" provision, and "termination fee"[6]—there is nothing "inherently wrongful" about any of them, let alone anything so inherently wrongful as to

---

[6] The "no shop" provision prohibits ARCT from soliciting or negotiating with other potential acquirers; the "information rights" provision requires ARCT to disclose to Realty Income all unsolicited acquisition proposals from third parties; the "matching rights" provision allows Realty Income to match any competing proposals; and the termination fee provision requires ARCT to pay $51 million (approximately 3.8% of the total transaction value) if ARCT accepts a superior offer from a third party. Compl. ¶¶ 58-61; Ex. A at 14, 141-43.

12

demonstrate that Realty Income knowingly enabled a breach.  These are ordinary merger terms

accepted by Maryland courts.  *See In re Nationwide Health Prop., Inc. S'holder Litig.*, No. 24-C-

11-001476, 2011 Md. Cir. Ct. LEXIS 3, at *58-62 (Md. Cir. Ct. May 27, 2011) (dismissing

claim that a board breached its fiduciary duties by agreeing to "standard" deal protections,

including no shop, information rights, and matching rights provisions, and a termination fee);

*Jasinover v. Rouse Co*., No. 13-C-04-59594, 2004 WL 3135516, at *10 (Md. Cir. Ct. Nov. 4,

2004) (upholding a termination fee); *In re Terra Indus., Inc. S'holder Litig*., No. 24-C-10-

001302, 2010 Md. Cir. Ct. LEXIS 9, at *31-32 (Md. Cir. Ct. July 14, 2010) (upholding "deal

protection provisions" including no-solicitation, standstill, matching rights, and a termination

fee, all  deemed "necessary elements of obtaining a [] deal").  Courts recognize that these "deal

protection" provisions enable boards to obtain superior value for stockholders by reducing a

buyer's risk and uncertainty that the deal may not close. *Nationwide*, 2011 Md. Cir. Ct. LEXIS 3,

at *60 ("various methods used to 'lock up' an attractive deal are considered standard measures").

Likewise, the voting agreements with certain ARCT directors to ensure their commitment

to vote their stock in favor of the merger (Compl. ¶¶ 4, 54) are routine in mergers.  *See In re*

*Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 508 (Del. Ch. 2010) (a voting agreement concerning

38.88% of outstanding stock did not preclude the possibility of competing offers); *Orman v.*

*Cullman*, No. 18039, 2004 WL 2348395, at *7 n.91 (Del. Ch. Oct. 20, 2004) ("[v]oting

agreements, of course, are perfectly legal").

Finally, as for the disclosures, there is nothing "inherently wrongful" about the extensive

disclosures in the Joint Proxy.  *See* Compl. ¶¶ 63-71.  Those disclosures regarding the

background of the merger and the fairness opinions are typical. *See, e.g., In re Openlane, Inc. S'holder Litig.*, No. 6849-VCN, 2011 WL 4599662, at *10-16 (Del. Ch. Sept. 30, 2011) (holding that plaintiffs did not have a reasonable likelihood of succeeding on disclosure claims where the merger disclosures contained several pages of "detailed narrative [regarding] the sales process" and recounted "significant events"). There is no legal basis for Plaintiff's claim that the Joint Proxy should have disclosed even more details about the back-and-forth negotiations between Realty Income and ARCT (Compl. ¶¶ 64-70) or about Realty Income's financial analysis of the proposed merger (*id.* ¶ 71(a)-(f)). As discussed in the ARCT Defendants motion to dismiss, shareholders are not entitled to information that would enable them to "make an independent determination of fair value," nor are they entitled to a "play-by-play" description of the merger negotiations. *See* ARCT Defendants' Motion to Dismiss at 8-20 (citing, *inter alia*, *Nationwide*, 2011 Md. Cir. Ct. LEXIS 3, at *72; *Skeen v. Jo-Ann Stores,* Inc., No. 16863, 1999 WL 803974, at *7 (Del. Ch. Sept. 27, 1999), *aff'd,* 750 A.2d 1170 (Del. 2000)).

As for Plaintiff's claims that more information should have been disclosed about the fairness opinion prepared by Realty Income's financial advisors (Compl. ¶ 71(a)-(f)), her allegations miss the mark. Disclosures regarding the fairness opinion of *Realty Income's* financial advisors are directed to *Realty Income's* stockholders—not to Plaintiff and the ARCT's stockholders. *See Nationwide*, 2011 Md. Cir. Ct. LEXIS 3, at *74-75 (the buyer's financial advisor owes no duty to the target's stockholders; disclosures related the buyer's financial advisors' opinion are not material as a matter of law to the target's stockholders); *see also Arnold v. Society for Sav. Bancorp, Inc.*, No. 12883, 1995 WL 376919, at *8 (Del. Ch. June 15, 1995)

14

(offeror owed "no duty to provide accurate information" to target's stockholders, even where offeror had a "role" in "drafting the materials").

Even if information regarding the financial analysis conducted by Realty Income's advisors were legally relevant to ARCT's stockholders—which they are not—Plaintiff has alleged no material omissions in the Joint Proxy. *See Globis Partners, L.P. v. Plumtree Software Inc.*, No. 1577-VCP, 2007 WL 4292024, at *12 (Del. Ch. Nov. 30, 2007) (stockholders need not be given "all the financial data they would need if they were making an independent determination of fair value"; claims that further details should have been provided fail absent allegations that the disclosed information was not false); *Nationwide*, 2011 Md. Cir. Ct. LEXIS 3, at *73-75 ("Plaintiffs are not entitled" to the "roadmap used by [the financial advisor] in order to navigate their own route to reach the same destination.").

In short, even if Plaintiff had some plausible basis for claiming that more detail should have been disclosed by ARCT—and she does not—there is nothing "inherently wrongful," much less "*per se* illegal," about the disclosures.  Plaintiff has not pled any material misstatements or omissions by ARCT, much less that Realty Income aided and abetted non-existent disclosure liability.  *See* ARCT Defendants' Motion to Dismiss at 8-23.

## IV.    CONCLUSION

Plaintiff's claim for aiding and abetting a breach of fiduciary duty by the ARCT directors has no well-pled basis and fails as a matter of law.  Accordingly, Realty Income (including its subsidiary Tau Acquisition LLC) respectfully request that this claim be dismissed with prejudice.

OC\1500655.1DMEAST #16121369 v1

Date:  December 19, 2012                    Respectfully submitted,


                                            _/s/_____
                                            Charles S. Hirsch (Fed. Id No. 06605)
                                            BALLARD SPAHR LLP
                                            300 East Lombard Street
                                            18th Floor
                                            Baltimore, MD 20102
                                            Telephone:  (410) 528-5503
                                            Fax:  (410) 528-5650

                                            *Attorney for Defendants Realty Income Corporation
                                            and Tau Acquisition, LLC*

OF COUNSEL:

Miles N. Ruthberg
Paul A. Serritella
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864

Michele D. Johnson
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626-1925
Telephone:  (714) 540-1235
Facsimile:  (714) 755-8290

Pamela S. Palmer
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
Telephone:  (213) 891-8435
Facsimile:  (213) 891-8763