**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SYDELLE GOLDWURM,  Individually and On Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>   v.<br><br>AMERICAN REALTY CAPITAL TRUST, INC., *et al.*,<br><br>   Defendants. | Case No. 1:12-cv-03516-JKB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
<u>TEMPORARY RESTRAINING ORDER</u>**

**TABLE OF CONTENTS**

I.      STATEMENT OF FACTS ................................................................................................ 2

II.     ARGUMENT ................................................................................................................ 6

        A.      Standard For Temporary Restraining Order ............................................................ 6

        B.      Plaintiff Can Demonstrate A Likelihood Of Success On The Merits.................... 7

                1.      The Financial Projections Or Forecasts Are Material
                        And Must Be Disclosed .......................................................................... 9

                2.      The Fees Payable to Investment Bankers Must be Disclosed.................. 11

        C.      A High Probability Of Irreparable Harm Exists .................................................. 12

III.    THE BALANCE OF EQUITIES FAVORS THE ISSUANCE OF A TRO.................... 13

IV.     CONCLUSION............................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Anderson, Clayton S'holders' Litig.*,
  519 A.2d 669 (Del. Ch.1986).........................................................................................13, 14

*Arnold v. Soc'y for Sav. Bancorp., Inc.*,
  650 A.2d 1270 (Del. 1994) ...................................................................................8, 9, 11

*In re Art Tech. Grp., Inc. S'holders Litig.*,
  C.A. No. 5955-VCL, 2010 Del. Ch. LEXIS 257 (Del. Ch. Dec. 21, 2010) ...........................11

*In re Atheros Commc'ns, Inc. S'holder Litig.*,
  C.A. No. 6124-VCN, 2011 Del. Ch. LEXIS 36 (Del. Ch. Mar. 4, 2011)...........................9, 12

*Braunschweiger v. Am. Home Shield Corp.*,
  C.A. No. 10755, 1991 Del. Ch. LEXIS 7 (Del. Ch. Jan. 7, 1991)...........................................9

*Cinerama, Inc. v. Technicolor, Inc.*,
  663 A.2d 1156 (Del. 1995) .......................................................................................8

*David P. Simonetti Rollover IRA v. Margolis*,
  C.A. No. 3694-VCN, 2008 Del. Ch. LEXIS 78 (Del.Ch. June 27, 2008) ...........................9, 11

*Gantler v. Stephens*,
  965 A.2d 695 (Del. 2009) .......................................................................................9

*Gilmartin v. Adobe Res. Corp.*,
  1992 Del. Ch. LEXIS 80 (Del. Ch. Apr. 6, 1992) ..................................................12

*In re John Q. Hammons Hotels Inc. S'holder Litig.*,
  No. 758-CC, 2009 Del. Ch. LEXIS 174 (Del. Ch. Oct. 2, 2009) ...........................................11

*Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*,
  No. RDB 05-841, 2005 U.S. Dist. LEXIS 26837 (D. Md. Nov. 3, 2005)................................7

*Laborers Local 235 Benefit Funds v. Starent Networks Corp.*,
  No. 5002-CC, 2009 Del. Ch. LEXIS 210 (Del.. Ch. Nov. 18, 2009) .....................................12

*Malone v. Brincat*,
  722 A.2d 5 (Del. 1998) ...........................................................................................8

*Marhart v. CalMat Co.*,
  C.A. No. 11,820, 1992 Del. Ch. 85 (Del. Ch. Apr. 22, 1992) ..................................................8

*In re Netsmart Techs., Inc. S'holders Litig.*,
    924 A.2d 171 (Del. Ch. 2007)................................................................................10

*ODS Techs., L.P. v. Marshall*,
    832 A.2d 1254 (Del. Ch. 2003)..............................................................................12

*Prosperity Sys., Inc. v. Ali*,
    No. CCB-10-2024, 2010 U.S. Dist. LEXIS 132414 (D. Md. Dec. 15, 2010) ..........6

*In re Pure Res. S'holders Litig.*,
    808 A.2d 421 (Del. Ch. 2002)................................................................................10

*Real Truth About Obama, Inc. v. FEC*,
    575 F.3d 342 (4th Cir. 2009) ...................................................................................6

*Shenker v. Laureate Educ., Inc.*,
    411 Md. 317 (Md. 2009)...........................................................................................8

*Skeen v. Jo-Ann Stores, Inc.*,
    750 A.2d 1170 (Del. 2000) .......................................................................................9

*In re Staples, Inc. S'holders Litig.*,
    792 A.2d 934 (Del. Ch. 2001).........................................................................13, 14

*State of Wisconsin Inv. Bd. v. Bartlett*,
    C.A. No. 17727, 2000 Del Ch. LEXIS 22 (Del. Ch. Feb. 9, 2000) .......................13

*Winter v. Natural Res. Def. Council, Inc.*,
    129 S. Ct. 365 (2008)................................................................................................6

## OTHER AUTHORITIES

Fed. R. Civ. P. 65(a) .................................................................................................1

Md. Code Ann., Corp. & Ass'ns § 2-405.1(a) ..........................................................8

Sydelle Goldwurm ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 65(a), respectfully submits this Memorandum of Law in support of her motion for a temporary restraining order ("TRO"), which seeks to enjoin the shareholder vote scheduled for January 16, 2012 (the "Shareholder Vote") regarding the proposed acquisition of American Realty Capital Trust, Inc. ("ARCT" or the "Company") by Tau Acquisition LLC ("Merger Sub"), a wholly-owned subsidiary of Realty Income, Corp. (collectively "Realty Income") (collectively ARCT Realty Income, and the ARCT Board of Directors ("Board"),[1] the "Defendants") announced on September 6, 2012, until such time as more complete and material disclosures regarding the Proposed Transaction (defined below) are made to Plaintiff and other similarly situated shareholders of ARCT.

On October 1, 2012, Defendants filed a Form S-4 containing a proxy statement to solicit votes from ARCT shareholders on the proposed merger ("Proxy").

On January 8, 2013, Defendants filed a Form 8-K with the U.S. Securities and Exchange Commission ("SEC") (the "Supplemental 8-K") and entered into a memorandum of understanding ("MOU") in an attempt to settle state-law claims concerning the Proposed Transaction.[2]  As discussed further below, the Defendants have failed to remedy their inadequate disclosures contained in the Proxy.   Given Defendants' refusal to disclose all material information concerning the Proposed Transaction, a TRO is warranted unless and until Defendants make the requested disclosures which are critical for ARCT's shareholders to cast a fully informed vote on the Proposed Transaction.

---

[1]  The ARCT Board includes Defendants: Nicholas S. Schorsch, Leslie D. Michelson, William M. Kahane, William G. Stanley and Robert H. Burns.

[2]  The Supplemental 8-K resolves the state claims in the action titled *In re American Capital Trust, Inc. Shareholders Litigation*, No. 24-c-12-005306 (the "Maryland Action") and is annexed hereto as Exhibit A.

Although the Supplemental 8-K addresses a discrete few of the disclosures issues raised in Plaintiff's Class Action and Derivative Complaint for breach of fiduciary duty and individual claims for violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Complaint"), numerous disclosures of material importance remain unaddressed--specifically, information related to the discounted cash flow analysis and fees to be paid to Wells Fargo Securities, LLC ("Wells Fargo"), one of ARCT's financial advisors providing  services in connection with  the Proposed Transaction.   The Supplemental 8-K fails to address these material disclosures.   Absent this information, Plaintiff and all other similarly situated shareholders of ARCT will be unable to adequately value the proposed consideration and cast an informed vote regarding the Proposed Transaction.

In support of her Motion, Plaintiff sets forth herein the legal framework that forms the basis for her entitlement to a TRO.  Plaintiff will present evidentiary support for her Motion at the hearing to be scheduled by this Court, at which Plaintiff intends to demonstrate that Defendants have breached and are continuing to breach their fiduciary duties owed to the public shareholders of ARCT in connection with the Proposed Transaction by Realty Income and/or are aiding and abetting the breach of such duties.  Absent the Court's intervention, Plaintiff and all other ARCT shareholders will suffer irreparable injury by being forced to cast an uninformed vote on the Proposed Transaction.

## I.    STATEMENT OF FACTS

As set forth in Plaintiff's Complaint on September 6, 2012, ARCT and Realty Income issued a joint press release announcing the Proposed Transaction.  Specifically, the press release announced ARCT's entry into the merger agreement ("Merger Agreement") with Realty Income pursuant to which Realty Income will acquire all of the Company's outstanding shares in an all-

stock transaction in which ARCT's shareholders will receive the purported equivalent of $12.21 per share, or approximately $1.9 million in total equity value (the "Proposed Transaction").

On December 6, 2012, the SEC declared the Proxy effective. [3]  That Proxy failed to disclose several of the underlying methodologies, projections, key inputs, and multiples supporting the fairness opinion ("Fairness Opinion") provided by Goldman, Sachs & Co. ("Goldman Sachs"), the Company's financial advisor, as well as the analyses undertaken by Bank of America Merrill Lynch ("Merrill Lynch") and Wells Fargo including:

    i.    The Proxy fails to disclose the ratios and multiples observed by Wells Fargo and Goldman Sachs for each of the companies in their respective *Selected Companies Analyses*. Similarly, in Merrill Lynch's *Selected Publicly Traded Companies Analysis* for both ARCT and Realty Income, the Proxy fails to disclose the ratios and multiples observed by Merrill Lynch for each of the selected companies.  This information is material, because shareholders are forced to rely on relatively limited information, and, without further disclosure regarding these selected companies, they will be unable to properly determine how comparable each of the selected companies are;

    ii.    In the *Selected Precedent Transactions Analysis*, Merrill Lynch analyzed six transactions involving REITs in the net lease sector, disclosing the overall low and high multiples of the six transactions.  However, the Proxy fails to disclose the relevant multiples for each of the precedent transactions, which is material to shareholders so they can make a determination as to whether the multiples, and thus the selected transactions, are comparable in both scope and time;

    iii.    The Proxy fails to disclose, in Merrill Lynch's *Discounted Cash Flow Analysis* ("DCF"), the synergies that Merrill Lynch considered in its analysis, the treatment of any stock-based compensation and of net operating losses ("NOLS"), if any.  Additionally, it fails to disclose the underlying rationale for selecting ARCT's range of perpetuity growth rates of 0.75% to 1.25%.  Absent such information, ARCT shareholders will be unable to determine whether the DCF is reliable;

    iv.    In the *Dividend Discount Analysis* performed by Merrill Lynch, the Proxy fails to disclose "other things" upon which Merrill Lynch relied when selecting a perpetual dividend growth rate range.  Without this

---

[3]  Relevant portions of the Proxy are annexed hereto as Exhibit B.

information, shareholders will be unable to determine the critical factors relied upon by Merrill Lynch, and thus whether the analysis is reliable;

v.  In the *Dividend Discount Analysis* performed by Wells Fargo, the Proxy fails to disclose the basis upon which Wells Fargo chose to apply multiples of 14x to 17x and the basis upon which Well Fargo chose to apply a discount rate range of 9% to 10%, without which shareholders will be unable to determine if the analysis is reliable;

vi.  In the *Miscellaneous* section of Wells Fargo's analyses, the Proxy fails to disclose what portion of Wells Fargo's aggregate fee of $3.5 million is contingent upon consummation of the merger.  It additionally fails to disclose whether Merrill Lynch has provided any services to ARCT during the preceding two years.  This information is material to a shareholder's determination of how much weight to place on the analyses of the financial advisor;

vii.  In the *Illustrative Present Value of Future Return Analysis,* Goldman Sachs devised hypothetical future share prices for ARCT common stock by applying an illustrative range of price/adjusted funds from operations ("AFFO") multiples of 12x to 15x to ARCT's estimated AFFO per share for 2013-2017.  However, the Proxy fails to disclose why Goldman Sachs chose to apply this range of multiples.  Without this information, ARCT shareholders will be unable to properly determine if the analysis is reliable;

viii.  In the *Illustrative Dividend Discount Analysis*, Goldman Sachs performed a sensitivity analysis in which it applied discount rates ranging from 8.25% to 9.25% to ARCT's estimated dividends per share for the 2013-2017 (which projected financial information was prepared by ARCT management) and also to ARCT's illustrative terminal values which were derived by applying perpetuity growth rates ranging from 1% to 3% to the Company's estimated dividend per share for the year 2017.  The Proxy fails to disclose Goldman Sachs' basis for applying these discount rates and perpetuity growth rates, information necessary to a shareholder in determining whether the analysis is reliable;

ix.  In the *Selected Precedent Transactions Analysis* performed by Goldman Sachs, the Proxy fails to disclose the relevant multiples for each of the transactions, which is material to shareholders so they can make a determination as to whether the multiples, and thus the selected transactions, are reliable;

x.  The Proxy fails to disclose, in the *Illustrative Accretion/Dilution Analysis* performed by Goldman Sachs, the synergies estimated by Realty Income's management that would result from the merger, an estimate which was provided to Goldman Sachs by Realty Income.  This information is

material to a determination of whether the analysis is reliable and whether the consideration of the transaction is fair;

xi.       The Proxy fails to disclose whether Goldman Sachs has performed any services for Realty Income and, if so, the amount of compensation received. This is material in a shareholder's determination of how much weight to place upon the analyses provided by a Goldman Sachs;

xii.      The Proxy further fails to quantify the amount of ARCT's capital expenditures considered in any of the analyses performed by any of the financial advisors. Capital expenditures are a material part of ARCT's business and a material component underlying a number of the analyses performed by the financial advisors and is necessary to a shareholder's understanding of the Proposed Transaction and the analyses performed; and

xiii.     The Proxy fails to disclose the results of Goldman Sachs' *Discounted Cash Flow Analysis* or even whether such an analysis was undertaken, material information upon which shareholders rely when considering the strength of their investment in the Company.

Subsequently, on January 8, 2013, Defendants issued the Supplemental 8-K. While the Supplemental 8-K mooted select disclosures listed above,[4] Defendants' Proxy still fails to disclose all material information concerning the Proposed Transaction. At a minimum, the Proxy should include the following information:

(i)       Information regarding the *Miscellaneous Section* including the portion of which Wells Fargo's aggregate fee, $3.5 million, is contingent upon consummation of the Proposed Transaction;

(ii)      Information regarding the free cash flows as estimated by ARCT management, including depreciation and amortization and capital expenditures;

(iii)     Information regarding the synergies estimated by Realty Income's management that were included in both Goldman Sach's *Illustrative Accretion/Dilution Analysis* and Merrill Lynch's *Discounted Cash Flow Analysis*; and

(iv)      Information regarding the amount of ARCT's capital expenditures considered in any of the analyses performed by any of its financial advisors.

---

[4] The Supplemental 8-K addressed disclosures ii, iii and ix.

The Proxy fails to disclose a complete set of projections or forecasts created by ARCT's management and relied upon by the financial advisors in issuing their Fairness Opinions.  The projected financial forecasts of ARCT, particularly cash flows, are material to ARCT's shareholders, given not only the reliance by the Company's financial advisors on such information in its Fairness Opinions, but the ARCT Board's reliance on such Fairness Opinion. The absence of these underlying financial projections renders the various valuation analyses conducted by the financial advisors misleading.  Both the financial projections and free cash flows are critical for ARCT's shareholders in casting their votes on the Proposed Transaction.

Absent the Court's intervention, granting the TRO, Plaintiff and the Class will suffer irreparable injury by being forced to cast an uniformed vote on the Proposed Transaction. Accordingly, Plaintiff respectfully requests that the Court enjoin the Proposed Transaction unless or until the ARCT Board discloses all material information concerning the Proposed Transaction.

## II.   ARGUMENT

### A.     Standard For Temporary Restraining Order

To obtain a temporary restraining order, the applicant must ordinarily plead and prove four specific elements:

> (1) whether the movant has established he or she is likely to succeed on the merits; (2) whether the movant would suffer irreparable harm in the absence of an preliminary relief; (3) whether the balance of equities tips in his or her favor; and (4) whether an injunction would serve the public interest.

*Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008); *see Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated and remanded on other grounds*, 130 S. Ct. 2371 (2010) (same); *Prosperity Sys., Inc. v. Ali*, No. CCB-10-2024, 2010 U.S. Dist. LEXIS 132414, at *5 (D. Md. Dec. 15, 2010).

A temporary restraining order is appropriate in the present circumstances because (1) Defendants have failed to disclose material information to ARCT's shareholders regarding the Proposed Transaction in breach of their fiduciary duties; (2) ARCT's shareholders will be irreparably harmed by being forced to cast their vote on the Proposed Transaction without being adequately informed, unless the Court enjoins the Shareholder Vote requiring Defendants make adequate disclosure regarding it; and (3) there is a strong public interest in preventing corporate fiduciaries from submitting matters to a Shareholder Vote without adequately informing their shareholders regarding those matters.

### B.     Plaintiff Can Demonstrate A Likelihood Of Success On The Merits

The ARCT Board has failed to adhere to its fiduciary duties by failing to fully disclose to ARCT's shareholders all material information related to the Proposed Transaction.  The Proxy is deficient in that (1) it fails to disclose a complete set of financial projections created by ARCT's management and relied upon by Goldman Sachs in rendering its Fairness Opinion to the ARCT Board; (2) material information concerning the portion of which Wells Fargo's aggregate fee, $3.5 million, is contingent upon consummation of the Proposed Transaction; (3) the synergies estimated by Realty Income's management included in both Goldman Sach's *Illustrative Accretion/Dilution Analysis* and Merrill Lynch's *Discounted Cash Flow Analysis*; and (4) the amount of ARCT's capital expenditures considered in any of the analyses performed by any of its financial advisors.  The Court must enjoin the Shareholder Vote unless or until Defendants make curative disclosures concerning these points.

Maryland courts, including this Court, routinely look to Delaware law for guidance when dealing with corporate issues.  *Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*, No. RDB 05-841, 2005 U.S. Dist. LEXIS 26837, at *11, (D. Md. Nov. 3, 2005) ("With respect to corporate governance issues, Maryland courts often look to Delaware case law.").  In the merger context,

complete candor must guide corporate directors' communications with shareholders. *Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 336, (Md. 2009)*, (*"In undertaking those managerial decisions, directors and officers owe the duty of care contained in § 2-405.1(a) . . . .); *Malone v. Brincat*, 722 A.2d 5, 10 n.17 (Del. 1998) (citing *Marhart, Inc. v. CalMat Co.*, C.A. No. 11,820, 1992 Del. Ch. LEXIS 85, at *9 (Del. Ch. Apr. 22, 1992), slip op. at 6) ("Delaware directors are fiduciaries and are held to a high standard of conduct . . . .  It is entirely consistent with this settled principal of law that fiduciaries who undertake the responsibility of informing shareholders about corporate affairs, be required to do so honestly."); *see also* Md. Code Ann., Corp. & Ass'ns § 2-405.1(a).

Additionally, in Maryland "[i]t is clear that officers and directors of a corporation stand in a sufficiently confidential relation to the corporation's stockholders to i***mpose a duty upon them to reveal all facts material to the corporate transactions***." *Shenker*, 411 Md. At 338 (Md. 2009) (quotation omitted) (emphasis added)*.*  Similarly, in Delaware, "fiduciary duties of care and loyalty give[] rise to the requirement that 'a director disclose to shareholders ***all material facts*** bearing upon a merger vote. . . .'" *Cinerama, Inc. v. Technicolor, Inc.,* 663 A.2d 1156, 1163 (Del. 1995) (quotation omitted) (emphasis added).  "When stockholder action is requested, directors are required to provide shareholders with ***all information that is material*** to the action being requested and 'to provide a balanced, truthful account of all matters disclosed in the communications with shareholders.'" *Malone*, 722 A.2d at 12 (emphasis added).

If there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available," it is material and the directors must disclose it. *Arnold v. Soc'y for Sav. Bancorp., Inc.*, 650 A.2d 1270, 1277 (Del. 1994).  Plaintiff need not show that disclosure of the

information would necessarily change her decision on how to vote for the Proposed Transaction. *David P. Simonetti Rollover IRA v. Margolis*, C.A. No. 3694-VCN, 2008 Del. Ch. LEXIS 78, at *18-19 (Del.Ch. June 27, 2008). Rather, a fact is material and must be disclosed "if there is a substantial likelihood [that] a reasonable stockholder would consider [it] important in deciding how to vote." *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1172 (Del. 2000) (quotations omitted).

Further, although boards are "not required to disclose all available information[,]" "once [they] travel [ ] down the road of partial disclosure . . . they ha[ve] an obligation to provide the stockholders with an accurate, full, and fair characterization of those historic events." *Gantler v. Stephens*, 965 A.2d 695, 710-11 (Del. 2009) (quoting *Arnold*, 650 A.2d at 1280; *see also, e.g.*, *In re Atheros Commc'ns, Inc. S'holder Litig.*, C.A. No. 6124-VCN, 2011 Del. Ch. LEXIS 36, at *26 (Del. Ch. Mar. 4, 2011). Shareholders cannot be expected to vote their shares on a Proposed Transaction based upon partial disclosures. *Braunschweiger v. Am. Home Shield Corp.*, C.A. No. 10755, 1991 Del. Ch. LEXIS 7, at *14 (Del. Ch. Jan. 7, 1991).

Plaintiff has alleged that the ARCT Board failed to disclose material information in the Proxy. Plaintiff can demonstrate a reasonable probability of success in proving that the Proxy omitted material information needed by ARCT's shareholders to make an informed decision on how to vote for the Proposed Transaction, given that the omitted information Plaintiff now seeks is materially important to an investor in making his or her decision on whether to support the Proposed Transaction.

### 1.   The Financial Projections or Forecasts are Material and Must be Disclosed

The opinion of the company's financial advisor is perhaps the most important information that needs to be disclosed to shareholders in connection with a merger. Indeed, it is

fundamental that, in order to make an informed decision, shareholders need a fair summary of a financial advisor's analyses. As the Delaware Court of Chancery has stated:

> [S]tockholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely… [T]he disclosure of the banker's "fairness opinion" alone and without more, provides stockholders with nothing other than a conclusion, qualified by a gauze of protective language designed to insulate the banker from liability.
>
> ***The real informative value of the banker's work is not in its bottom-line conclusion, but in the valuation analysis that buttresses that result.***

*In re Pure Res. S'holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002) (emphasis added) (shareholders confronted with the choice of tendering their stock or not would find it material to know "key assumptions" that an investment banker used in performing its analyses) (emphasis added).  Similarly, as explained by the court in *In re Netsmart Techs., Inc. S'holders Litig*, 924 A.2d 171, 203-204 (Del. Ch. 2007):

> Once a board broaches a topic in its disclosures, a duty attaches to provide information that is "materially complete and unbiased by the omission of material facts." For this reason, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion ***as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Only providing some of that information is insufficient to fulfill the duty of providing a "fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of the [] board as to how to vote…rely."***

(quotations omitted) (emphasis added)

Like the defendants in *Pure Resources* and *Netsmart,* the Proxy fails to disclose the underlying methodologies, key inputs and multiples observed by Merrill Lynch, Wells Fargo in connection with the Proposed Transaction, which were also relied upon by Goldman Sachs in connection with rendering its Fairness Opinion, making it impossible for shareholders to draw any conclusions as to the reliability of the financial advisors' analyses.  This data is necessary for ARCT's shareholders to cast a fully informed vote on the Proposed Transaction.

Additionally, neither the Proxy nor the Supplemental 8-K provides the key inputs necessary to even attempt to derive free cash flows, such as capital expenditures, changes in working capital and depreciation & amortization.  This information is critical to understand the manner by which ARCT's financial advisors performed their analyses.  It is fundamental that shareholders have a right to all material information prior to a Shareholder Vote.  *Arnold*, 650 A.2d at 1277.

Accordingly, the key inputs and multiples relied upon by ARCTs' financial advisors, which the Supplemental 8-K fails to address, must be disclosed prior to the Shareholder Vote on the Proposed Transaction.

### 2.      The Fees Payable to Investment Bankers Must be Disclosed

It is well settled that courts require shareholders to be apprised of all material information regarding actual and potential conflicts of interest that bear on the ability of a board's financial advisors to perform their work objectively and without being subjectively manipulated to advance interests adverse to shareholders.  *See, e.g., In re John Q. Hammons Hotels Inc. S'holder Litig.*, No. 758-CC, 2009 Del. Ch. LEXIS 174, at *55-56 (Del. Ch. Oct. 2, 2009)

> This Court … has stressed the importance of disclosure of potential conflicts of interest of financial advisors.  Such disclosure is particularly important where there was no public auction of the Company and 'shareholders may be forced to place heavy weight upon the opinion of such an expert.'  It is imperative that stockholders be able to decide for themselves what weight to place on a conflict faced by the financial advisor.

(quotation omitted)

*see also David P. Simonetti Rollover IRA*, C.A. No. 3694-VCN, 2008 Del. Ch. LEXIS 78, at *25-36 (enjoining a stockholder vote pending disclosure of the financial advisor's pecuniary interest in the transaction);  *In re Art Tech. Grp., Inc. S'holders Litig.*, C.A. No. 5955-VCL, 2010 Del. Ch. LEXIS 257 (Del. Ch. Dec. 21, 2010) (enjoining merger between ATG and Oracle until

fees that Oracle previously paid to Morgan Stanley, financial advisor to ATG, were disclosed to ATG shareholders); *In re Atheros Commc'ns, Inc*, 2011 Del. Ch. LEXIS, at *28 (enjoining a merger until the contingent fee arrangement with the financial advisor was disclosed).

Like *Atheros*, ARCT's shareholders should be apprised of the contingent fees to be earned by Wells Fargo if the Proposed Transaction is consummated. The contingent fees to be paid to Wells Fargo for services rendered is material and must be disclosed to Plaintiff and all other similarly situated shareholders of ARCT so that they can determine how much weight to put on the analyses performed by Wells Fargo.

### C.      A High Probability Of Irreparable Harm Exists

Plaintiff and all other similarly situated shareholders of ARCT will suffer irreparable injury if Plaintiff's TRO motion is not granted. The Delaware Court of Chancery has provided that "[t]he threat of an uninformed stockholder vote constitutes irreparable harm." *ODS Techs., L.P. v. Marshall*, 832 A.2d 1254, 1262 (Del. Ch. 2003); *see also Laborers Local 235 Benefit Funds v. Starent Networks Corp.*, No. 5002-CC, 2009 Del. Ch. LEXIS 210, at *1 (Del.. Ch. Nov. 18, 2009) ("Under Delaware law, ***nearly all disclosure violations are per se irreparable harm because the harm arising from the un-or misinformed transaction is of a nature where the injury cannot be compensated adequately in damages.***") (citation omitted) (emphasis added). Absent the Court's relief, Plaintiff will be forced to cast an uninformed vote on the Proposed Transaction. *See Gilmartin v. Adobe Res. Corp.*, 1992 Del. Ch. LEXIS 80, at *43 (Del. Ch. Apr. 6, 1992) ("[t]he right to cast an informed vote is specific, and its proper ***vindication in this case requires a specific remedy such as an injunction, rather than a substitutionary remedy such as damages***.") (emphasis added). Accordingly, the Court should now enjoin the vote set to take place on January 16, 2013 unless or until Defendants' remedy their breaches of fiduciary duty by disclosing all material information concerning the Proposed Transaction.

### III.      THE BALANCE OF EQUITIES FAVORS THE ISSUANCE OF A TRO

In balancing the equities, the Court must weigh the potential harm to the Plaintiff (and other shareholders) if the injunction is not issued against the potential harm to the Defendants if injunctive relief is granted.  Here, the equities decidedly favor the granting of the TRO.  The denial of this limited interim relief will forever foreclose ARCT's shareholders from making an informed decision regarding how to vote their shares on the Proposed Transaction based on the withheld information.   By contrast, granting injunctive relief will result in the ability of Defendants to comply with their fiduciary duties owed to Plaintiff and other similarly situated shareholders of ARCT.

Equally important, no hardship to the Defendants will occur as a result of a TRO requiring that ARCT's shareholders have the opportunity to consider material supplemental disclosures before deciding if they vote their shares in favor of the Proposed Transaction.

> [O]ur cases recognize that it is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected.  An injunctive remedy of that nature specifically vindicates the stockholder right at issue --the right to receive fair disclosure of the material facts necessary to cast a fully informed vote -- in a manner that later monetary damages cannot and is therefore the preferred remedy, where practicable.

*In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001) (citation omitted);  *see also State of Wisconsin Inv. Bd. v. Bartlett*, C.A. No. 17727, 2000 Del. Ch. LEXIS 22, at *8 (Del. Ch. Feb. 9, 2000) (noting that hardships suffered by defendant by delay of vote were *de minimus* when compared to the possibility that the shareholders voted on the extinction of their corporation with less than all the material reasonably available to them);  *In re Anderson, Clayton S'holders' Litig.*, 519 A.2d 680, 676 (Del. Ch. 1986) (recognizing, in balancing harm, that delay in any large transaction may involve risks of employee agitation or market

fluctuations, but finding those factors not "especially significant in light of the fundamental importance of the [transaction] and its likely long-term consequences.").

Furthermore, Defendants will suffer no prejudice from a short postponement of the closing of the transaction to give shareholders sufficient time to absorb the curative disclosures, as the Merger Agreement allows for the extension of with the Proposed Transaction.   Any postponement of the closing of the Proposed Transaction, to the extent that is even necessary, to allow for corrective disclosures is, on balance, worth the cost because it will ensure an informed decision regarding shareholders casting their vote on the Proposed Transaction.   *See In re Staples*, 792 A.2d 934.   The shareholders' right to an informed decision clearly must be protected.   Respect for the shareholders' right to determine the course of the Company's future compels granting Plaintiffs' motion for a TRO.   *In re Anderson*, 519 A.2d at 679.

As such, the balancing of the equities strongly favors the granting of a TRO here.

## IV.    CONCLUSION

For the foregoing reasons, and for good cause shown, Plaintiff respectfully requests that her motion be granted.

 Dated: January 11, 2013

**DEHAY & ELLISTON LLP**

By: */s/Patrick C. Smith*
Patrick C. Smith (Bar No. 02054)
36 South Charles Street
Suite 1300
Baltimore, Maryland 21201
psmith@dehay.com
Telephone:  410-783-7225
Facsimile:  410-783-7221

*Of Counsel*:

**FARUQI & FARUQI, LLP**
Juan E. Monteverde
369 Lexington Ave., Tenth Floor
New York, NY  10017
Telephone: (212) 983-9330
Facsimile:  (212) 983-9331


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of January 2013, I electronically filed Plaintiff's

Motion for Temporary Restraining Order with the Clerk of Court using the CM/ECF system,

which will then send a notification of such filing to the following:

Scott H. Marder, Esq.
Duane Morris LLP
111 South Calvert Street, Suite 2000
Baltimore, MD 21202-6114

Charles S. Hirsch, Esq.
Ballard Spahr LLP
300 East Lombard Street, 18th Floor
Balitmore, MD 21202


*/s/ Patrick C. Smith*
Patrick C. Smith

15